**J.A. INDUSTRIES, INC., Appellant,**

**v.**

**ALL AMERICAN PLASTICS, INC. et al., Appellees.**

[Cite as *J.A. Industries, Inc. v. All Am. Plastics, Inc.* (1999), 133 Ohio App.3d 76.]

Court of Appeals of Ohio,
Third District, Putnam County.

No. 12–98–11.

Decided June 25, 1999.

78

Norman A. Abood, for appellant.

Firmin, Sprague & Huffman Co., L.P.A., and Stephen A. Roepke, for appellees.

SHAW, Judge.

This summary judgment appeal arises from the bulk purchase of certain manufacturing equipment by plaintiff-appellant, J.A. Industries, Inc., from defendant-appellee All American Plastics ("AAP"). At the time of the purchase, defendant-appellee G. Richard Howard was the president and a minority shareholder of All American Plastics, and James M. Appold was the president and sole shareholder of appellant J.A. Industries, Inc.

Primarily at issue in this case is a particular piece of equipment called a "calendar line," which makes rolls of plastic sheeting. In the summer of 1993, Appold observed the calendar line at appellees' factory and expressed an interest in purchasing the machinery to make polystyrene cookie trays for use by his business, Consolidated Biscuit, Inc. Pursuant to an agreement unrelated to this case, Consolidated Biscuit was required to use polystyrene trays that met specifications issued by Nabisco, Inc.

Shortly after Appold's visit to appellees, Howard telephoned Appold and told him that AAP's equipment was for sale; so Appold and his associate Bill Varney returned to the AAP premises to inspect the calendar line and other equipment. Appold observed the calendar line producing styrene and was also aware that the calendar line had not previously been used to make polystyrene. However, Appold indicated that if the calendar line could be used to produce polystyrene, his investment company J.A. Industries would be interested in acquiring AAP's assets. Based on Appold's visit, the parties began discussions in anticipation of a sale.

During sale negotiations, the parties employed a firm called Stratenomics to help facilitate the process. This firm prepared a written report entitled "Acquisition Scenarios," which contained the following paragraph:

"It is recommended that for both parties to evaluate the efficacy of this acquisition scenario, that an R & D phase be initiated at the earliest possible time. [J.A. Industries] would commit $60,000 for a 60 day effort *that would include producing polystyrene sheets to agreed upon specs*. A limited vacuum forming test would be undertaken by All American to verify tolerance and application of the calender [*sic*] generated sheets." (Emphasis added.)

At some point, Appold asked AAP to provide him with a sample roll of polystyrene produced from the calendar line. Despite the fact that the Stratenomics report suggested that appellee should be responsible for a "limited vacuum forming test," Appold apparently determined that he would be responsible for the testing. Howard provided the sample roll of plastic on behalf of AAP; and based on the results of that test, Appold determined that the polystyrene was "close to being usable" for formation into plastic cookie trays. However, no tests were run

to ensure that sample roll conformed to the "agreed upon" Nabisco composition specifications. Appold testified at his deposition that at no time did Howard or anyone else from AAP represent orally or in writing that the sample roll he had been given conformed to the Nabisco composition specifications. Appold stated that he assumed that the sample roll met the specifications.

The parties completed the equipment sale in a written contract dated December 14, 1993. The contract contains the following relevant clauses:

"To the best of SELLER's knowledge and belief, no representation or warranty contains any untrue statement of facts or omits to state any fact necessary in order to make the statements made not misleading to BUYER.

"* * *

"Except as expressly provided in this Agreement, neither party has made any representation or warranties to the other with respect to the Equipment.

"* * *

"This writing constitutes the entire agreement of the parties with respect to the subject matter hereof and may not be modified, amended or terminated except by a written agreement specifically referring to this Agreement signed by [AAP] and [J.A. Industries]."

Shortly after the sale of the business, it became apparent that the calendar line was incapable of producing plastic sheeting in conformance with the Nabisco specifications. Composition testing performed on a second sample roll confirmed that it contained a chemical not permitted under the specifications.

J.A. Industries filed a complaint against AAP and Howard on August 21, 1997, asserting claims for fraudulent inducement, negligent misrepresentation, and rescission. On May 27, 1998, AAP and Howard requested the trial court to bifurcate the case and allow them to file a motion for summary judgment with respect to two case-dispositive issues. The court granted the request to bifurcate, but, on June 12, 1998, J.A. Industries filed a request for leave to amend its complaint to add a fourth cause of action. The court also granted this request, and J.A Industries amended its prior complaint to include a claim of mutual mistake concerning the ability of the calendar line to produce polystyrene sheeting suitable for the production of cookie trays.

On July 15, 1998, appellees AAP and Howard filed a joint motion for summary judgment, arguing that Appold had admitted at his deposition that neither Howard nor anyone else from AAP ever told him that the sample roll met the Nabisco specifications. Appellees also argued that even if such statements were made, the parol evidence rule and lack of any justifiable reliance barred all of appellant's claims as a matter of law.

In an affidavit accompanying appellant's memorandum contra for summary judgment, Appold supplemented his earlier deposition testimony and asserted that several months prior to the delivery of the sample roll, he met with Howard and AAP's plant manager Dan Chatel at his office. Appold's affidavit states that at this meeting he informed Howard that he would only be interested in purchasing AAP's calender line and related equipment if it could produce polystyrene sheeting in accordance with the specifications required by Nabisco. Appold also stated that he provided Howard a copy of these specifications at that same meeting and that Howard "represented and agreed" that the composition of the polystyrene produced by the calender line would be in conformity with the Nabisco specifications.

On September 15, 1998, the trial court granted summary judgment to appellees on all claims asserted in the amended complaint, pursuant to Civ.R. 56. The trial court determined that the parol evidence rule barred appellant's claims and that even if parol evidence were admitted, appellant could not have justifiably relied upon any representations made by Howard. Appellant now asserts four assignments of error with the trial court's judgment.

■ When reviewing the grant of a motion for summary judgment, appellate courts review the judgment independently and do not give deference to the trial court. *Schuch v. Rogers* (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388, 1389–1390. Accordingly, the appellate standard for summary judgment is the same as that of the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414. In *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196, 1202, the Ohio Supreme Court enunciated the standard for summary judgment:

"[Summary judgment is proper] when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party."

■ Furthermore, in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274, the Ohio Supreme Court held that parties seeking summary judgment must "specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." (Emphasis deleted.) If the moving party satisfies that burden, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial," and summary judgment is proper if the party opposing judgment fails to set forth such facts. *Id.,* citing Civ.R. 56(E). Finally, we are mindful of the general rule that

reviewing courts may not reverse a correct judgment merely because it was based upon erroneous reasoning. See, *e.g., State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 514, 628 N.E.2d 1377, 1381.

Our analysis begins with the observation that this case deals primarily with the sale of a good: the calendar line. Transactions in goods are generally governed under Ohio's version of Article 2, Uniform Commercial Code, R.C. Chapter 1302. See R.C. 1302.02. However, unless displaced by a particular statutory provision, the code is supplemented by general principles of law and equity, including those governing mistake, fraud, and misrepresentation. R.C. 1301.03. Therefore, although the parties have not cited it, Article 2 of the *Uniform Commercial Code* is the basis for sales transaction addressed in this case.

■ We also note that appellant's complaint pleads rescission as its "third cause of action." Rescission is not a separate cause of action, but an equitable remedy. See, *e.g., Aluminum Line Products Co. v. Rolls–Royce Motors, Inc.* (1993), 66 Ohio St.3d 539, 543, 613 N.E.2d 990, 992–993. Moreover, Ohio law has folded the remedy of a sales contract rescission into the concept of "revocation of acceptance." See *id.* at 542–543, 613 N.E.2d at 992–993; cf. R.C. 1302.66.

■■ Although it appears that all of appellant's assigned errors address the three other claims, insofar as this appeal may argue that summary judgment on the claim for rescission was improperly granted, it is not well taken. R.C. 1302.66(B) requires that "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it * * * * [and it] is not effective until the buyer notifies the seller of it." Notification is a precondition to revocation of acceptance. See *Aluminum Line Products Co.,* 66 Ohio St.3d at 542, 613 N.E.2d at 992. However, appellant's complaint does not allege and the supporting materials do not establish that notice was given to the appellees prior to the filing of appellant's complaint, which occurred over three years after appellant became aware of the alleged defect in the calendar line. Because no notice was given of appellant's intent to revoke acceptance, any claim of a right to revoke acceptance must fail as a matter of law. See, *e.g., Konicki v. Salvaco, Inc.* (1984), 16 Ohio App.3d 40, 44–45, 16 OBR 43, 46–48, 474 N.E.2d 347, 350–352; R.C. 1302.65(C)(1). Accordingly, our review of this appeal is limited to appellant's three remaining causes of action: the tort claims of fraudulent inducement and negligent misrepresentation, and the contract claim of mutual mistake. We have reordered appellant's assigned errors to facilitate our review. Because appellant's second and third assignments of error present similar issues for our review we will address them simultaneously:

"The trial court committed prejudicial and reversible error in granting the motion for summary judgment in favor of the defendants–appellees because there

is a genuine issue of material fact as to whether the defendants–appellees had a duty to disclose that the sample of polystyrene had not been produced to agreed upon specifications and the defendants–appellees' silence constituted a fraudulent omission or misrepresentation."

"The trial court committed prejudicial and reversible error in granting the motion for summary judgment in favor of the defendants–appellees because there is a genuine issue of material fact as to whether the plaintiff–appellant justifiably relied on the representations of the defendants–appellees concerning the sample of polystyrene."

█ The trial court determined that appellant's reliance on appellee G. Richard Howard's alleged representations that the sample roll conformed to the Nabisco specifications was not justifiable and held that the lack of justifiable reliance barred the claims of fraudulent inducement and negligent misrepresentation. Appellant does not dispute that justifiable reliance is a prima facie element of both fraudulent inducement, see *Countrymark Cooperative, Inc. v. Smith* (1997), 124 Ohio App.3d 159, 171–172, 705 N.E.2d 738, 745–747, and negligent misrepresentation, see *Sindel v. Toledo Edison Co.* (1993), 87 Ohio App.3d 525, 531, 622 N.E.2d 706, 710. Instead, appellant contends that there is a genuine issue of material fact as to whether its reliance on the alleged statements was justifiable and also that appellees had a duty to inform appellant that the plastic did not meet the Nabisco standards. Appold's affidavit states, in relevant part:

"I relied on the representation and promise of Mr. Howard and Mr. Chatel, AAP's plant manager, that the sample roll of polystyrene sheeting produced on AAP's calendar line would be in conformity with the agreed Nabisco specifications, and that is why I did not have a composition test performed on the sample roll of polystyrene sheeting."

█ Appellant argues that Howard's prior representations created a duty to inform appellant that the sample roll had not been tested to confirm that it met the Nabisco specifications, and that his silence at the time of the sample roll's delivery was a misrepresentation.

█ While purchasers are normally entitled to rely on the reasonable representations of sellers, "a party dealing on equal terms with another is not justified in relying on representations where the means of knowledge are readily within his reach." 37 Corpus Juris Secundum (1997) 229, Fraud, Section 44(a). Here, the evidence is undisputed that Appold, the sole representative of appellant J.A. Industries, Inc., had unfettered access to the calendar line and the sample roll of polystyrene for several months prior to the closing of the sale. It is similarly uncontested that Appold's technical expertise as to plastics manufacture far exceeded that of Howard, upon whose alleged representations appellant now

wishes to rely. Finally, the unchallenged evidence reveals that Appold chose to perform vacuum form tests on the sample of polystyrene (tests that the Stratenomics report indicated were not his responsibility to perform), but did not perform any composition tests on the sample. Moreover, Appold never asked at the time of the sample's delivery whether composition tests had been performed on it, nor did he ask whether anyone at AAP knew whether the sample as produced actually met the Nabisco specifications. He simply made no effort to determine the reliability of the single statement made by Howard some two months prior to the production and delivery of the sample that "the sample roll * * * would be [produced] in conformity with the agreed Nabisco specifications."

Based on the foregoing, it cannot be claimed that a reasonably prudent person in Appold's position would have relied on the representations allegedly made by Howard. See, *e.g.*, 37 American Jurisprudence 2d (1968) 332–333, Fraud and Deceit, Section 249; cf. *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 90–91, 18 OBR 403, 406, 481 N.E.2d 1193, 1195–1197, quoting 37 American Jurisprudence 2d (1968) 330, 332, Fraud and Deceit, Section 248. We therefore conclude that appellant's reliance was not justifiable and that the claims of fraudulent inducement and negligent misrepresentation must fail as a matter of law.

Moreover, while "under certain circumstances, a mutual mistake is a sufficient basis to rescind a contract," *Fada v. Information Sys. & Networks Corp.* (1994), 98 Ohio App.3d 785, 790, 649 N.E.2d 904, 907, the facts here demonstrate that rescission based on mutual mistake would be improper. In *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 353, 632 N.E.2d 507, 508–509, the Ohio Supreme Court confirmed that Ohio follows the test enunciated in the Second Restatement of Contracts when addressing questions of mutual mistake. The Restatement provides:

"Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party *unless he bears the risk of the mistake under the rule stated in § 154.*" (Emphasis added.) 1 Restatement of the Law 2d, Contracts (1981) 385, Section 152(1).

Under the Restatement rule, a party bears the risk of a mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." 1 Restatement of Contracts 2d, *supra*, 402–403, Section 154(b). Appold was quite aware that Howard had only limited knowledge of plastics manufacture, yet chose to rely on representations allegedly made by Howard several months prior to the delivery of the sample roll. While appellant argues that Appold in fact relied upon Howard's silence at the time of the sample's

delivery, that distinction is of no consequence, since at both instances Appold was fully aware that his own knowledge of the composition of the sample roll was limited by Howard's understanding of plastics manufacture. Appellant had an unfettered opportunity to examine the actual situation by performing a composition test, but chose not to do so. Under these circumstances, the Restatement rule allocates the risk of reliance on the mistake to appellant.

We therefore believe that appellant's failure to take reasonable steps to confirm the validity of Howard's alleged representations precludes recovery for fraudulent inducement, negligent misrepresentation, and also for mutual mistake. Appellant's second and third assigned errors are overruled.

Appellant's first assignment of error provides:

"The trial court committed prejudicial and reversible error in granting the motion for summary judgment in favor of the defendants–appellees because there is a genuine issue of material fact as to whether the sample of polystyrene and the defendants–appellees representation to produce the sample to agreed upon specifications were exceptions to the parol evidence rule."

Appellant's first assigned error argues that the trial court improperly concluded that the parol evidence rule bars evidence of both the Stratenomics report and alleged representations by Howard that the sample roll would be produced in accordance with the Nabisco specifications. The trial court reasoned that because the parol evidence rule bars Howard's alleged representations and because appellant's claims rest on those representations, appellant's claims were barred. Appellant contends that the trial court failed to recognize the distinction between representations concerning the equipment, which are barred by the parol evidence rule, and representations concerning the *sample* produced from the equipment, which appellant argues are not barred.

 In addressing this argument, we first observe that there are actually two clauses contained in the contract that are particularly relevant to our analysis. The first clause operates to exclude any prior or contemporaneous warranties not contained in the agreement. However, appellant argues that the warranty exclusion clause in the agreement is limited by its terms to the equipment that is the subject of the contract, and thus that it does not apply to representations regarding the sample roll of plastic[1]:

---

1. Appellant has not alleged that appellees have breached the warranty of fitness for a particular purpose. See R.C. 1302.28. However, a conspicuous written general disclaimer may operate to limit or exclude the implied warranty of fitness for a particular purpose. See R.C. 1302.28, Official Comment 4. Because the parties have not placed the question before us, we have no occasion to decide whether the contract's exclusion clause satisfies the

"Except as expressly provided in this Agreement, neither party has made any representation or warranty to the other *with respect to the equipment.*" (Emphasis added.)

However, the transaction between the parties was not for the sale of a roll of plastic. The composition of the sample roll has no independent significance to the deal between the parties apart from the information it provides regarding the inability of the calendar line to produce polystyrene that conforms to the Nabisco specifications. Any representations as to the sample roll are therefore essentially representations as to the equipment and are excluded as prior warranties under the quoted passage.

█ Moreover, even if we are to assume that the representations do not relate to the equipment and are thus not excluded under the foregoing clause, they would be excluded under the parol evidence rule and the contract's merger clause. The parol evidence rule is a rule of substantive law designed to protect the integrity of final written agreements. See, *e.g., Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 109 N.E.2d 265, paragraph one of the syllabus. It operates by excluding evidence of negotiations, understandings, promises, or representations made prior to or contemporaneously with a final written contract. *Id.* at paragraph two of the syllabus.

Further, R.C. 1302.05 provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"(A) by course of dealing or usage of trade as provided in section 1301.11 of the Revised Code or by a course of performance as provided in section 1302.11 of the Revised Code; and

"(B) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Normally, the parol evidence rule would exclude all oral representations contradicting a written agreement where that contract is a "final expression" of the agreement between the parties. It appears that appellant does not dispute that the contract at issue in this case is a final expression of the agreement between the parties. Instead, appellant argues that the parol evidence rule does

---

requirements of R.C. 1302.28. Cf. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 55, 537 N.E.2d 624, 638–639.

not apply to cases of fraud, and, alternatively, that the representations do not contradict the agreement but are instead consistent additional terms that may be added to the contract pursuant to R.C. 1302.05(B).[2]

As to the first argument, we believe Ohio law is well settled that the parol evidence rule may apply to exclude evidence of fraudulent inducement in certain cases.

"[M]any Ohio cases have held that a party may offer evidence of prior or contemporaneous representations to prove fraud in the execution or inducement of an agreement. Indeed, without such evidence it would be difficult if not impossible to prove fraud. However, it is important to realize that *the law has not allowed parties to prove fraud by claiming that the inducement to enter into an agreement was a promise within the scope of the integrated agreement but which was not ultimately included in it.* Hence, if there is a binding and integrated agreement, then evidence of prior or contemporaneous representations is not admissible to contradict the unambiguous, express terms of the writing." (Emphasis added and citations omitted.) *Busler v. D & H Mfg., Inc.* (1992) 81 Ohio App.3d 385, 390–391, 611 N.E.2d 352, 356 (citations omitted); accord *Paragon Networks Intl. v. Macola, Inc.* (April 28, 1999), Marion App. No. 9–99–2, unreported, at 10–11, 1999 WL 280385.

Thus, admissibility of both the Stratenomics report and the statements allegedly made by Howard rest on the question of whether information as to the sample roll of plastic was "within the scope of the integrated agreement but which was not ultimately included in it." *Busler,* 81 Ohio App.3d at 390, 611 N.E.2d at 356; see, also, R.C. 1302.05(B).

As we have previously noted, the Stratenomics report is entitled "Acquisition Scenarios" and consists of suggestions designed to facilitate the sale of the assets of appellee AAP to appellant J.A. Industries, Inc. The report is therefore by its very definition information within the scope of the deal that was not included in the final agreement, and, thus, inadmissible parol evidence under *Busler.* Furthermore, we have previously observed that the composition of the sample roll of plastic impacts the deal between the parties only insofar as it reflects the inability of the calendar line to produce plastic pursuant to the Nabisco standards. The oral representations allegedly made by Howard as to the composition of the sample roll therefore relate solely to the ability of the calendar line to produce acceptable plastic, a subject clearly within the scope of

---

**2.** Appellant has not argued in either this court or the trial court that the representations are admissible under R.C. 1301.11 as evidence of "course of dealing." Accordingly, we do not pass on that issue.

the contract, yet not included in it. Howard's statements are thus also inadmissible under *Busler.*

In response to appellant's alternative argument, although R.C. 1302.05(B) allows the admission of parol evidence of "consistent additional terms" of a contract, such terms are only admissible if the contract is not a "complete and exclusive statement" of the agreement between the parties. R.C. 1302.05(B). However, the merger clause of the agreement states:

"This writing constitutes the entire agreement of the parties with respect to the subject matter hereof and may not be modified, amended or terminated except by a written agreement specifically referring to this Agreement signed by [AAP] and [J.A. Industries]."

Here, the merger clause of the agreement expressly states that the contract "constitutes the entire agreement of the parties," and evidence of consistent additional terms is therefore precluded by R.C. 1302.05(B).[3] For these reasons, the trial court correctly concluded that the parol evidence rule excludes the materials upon which appellant's fraudulent inducement and negligent misrepresentation claims rest. Accordingly, appellant's first assigned error is overruled.

Appellant's final assignment of error states:

"The trial court committed prejudicial and reversible error in granting summary judgment in favor of the defendant–appellee All American Plastics, Inc. on the claim for mutual mistake of fact since this relief was not requested within the motion for summary judgment."

In our discussion of appellant's third assignment of error we concluded that appellant bore the risk of reliance upon a mutual mistake under the contract and that rescission of the contract was precluded for that reason. Appellant's remaining assignment of error argues that appellees' motion for summary judgment did not request judgment for All American Plastics on the claim of mutual mistake. However, our review of appellees' memorandum in support of summary judgment reveals that appellees clearly argued that "the legal analysis in [the justifiable reliance] section of the Memorandum is equally applicable to

---

3. In some situations the R.C. 1301.09 requirement of good-faith dealing may allow parol evidence of an implied warranty of fitness for a particular purpose under R.C. 1302.28, even when the contract at issue contains a valid merger clause. See White & Summers, Handbook of the Law Under the Uniform Commercial Code (2d Ed. 1980) 92–93, Section 2–12. However, appellant has not presented a breach of warranty claim and has not alleged that the merger clause was included in bad faith. Cf. *id.* At any rate, we believe that the nature of the representations, the relationship and relative business and technical experience of the parties, and appellant's unfettered ability to test and examine the sample roll all point to a conclusion that the appellees' duty of good-faith performance was satisfied.

Plaintiff's mutual mistake of fact cause of action * * *." Defendants' Memorandum in Support of Motion for Summary Judgment. Moreover, appellants' motion itself requests an order of the trial court "dismissing *all* claims in this case * * *." Defendants' Motion for Summary Judgment at 1. Accordingly, this assignment of error is overruled.

For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Putnam County Court of Common Pleas is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and HADLEY, JJ., concur.