**CSX TRANSPORTATION, INC., Plaintiff,**

v.

**OCCIDENTAL CHEMICAL CORPORATION, Defendant.**

No. C–1–99–153.

United States District Court, S.D. Ohio, Western Division.

Jan. 16, 2001.

James Lacey O'Connell, Lindhorst & Dreidame Co., Cincinnati, OH, for CSX Transportation Inc., plaintiff.

Gerald Joseph Rapien, Taft Stettinius & Hollister, Cincinnati, OH, for Occidental Chemical Corporation, defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (doc. 13); Defendant's Response (doc. 16); Plaintiff's Reply (doc. 17); and Defendant's Request for Oral Arguments (doc. 19).

## BACKGROUND

Plaintiff is a Virginia corporation with its principal place of business in the State of Florida (docs. 1 & 3). Defendant is a New York corporation with its principal place of business in the State of Texas (*Id.*). Both entities conduct business in Hamilton County, Ohio (*Id.*). Jurisdiction is proper in this case pursuant to Title 28 U.S.C. § 1332 as there exists diversity of citizenship between the Parties and the amount in controversy exceeds $75,000.

On March 3, 1999, Plaintiff filed a Complaint in this action alleging claims for breach of contract and detrimental reliance (doc. 1). Defendant filed an Answer on May 24, 1999, denying Plaintiff's allegations and presenting a counterclaim against Plaintiff for unjust enrichment (doc. 3), followed by Plaintiff's Answer to Defendant's counterclaim (doc. 5).

Thereafter, on July 21, 2000, Plaintiff entered this Motion for Partial Summary Judgement contending that it is entitled to judgment as a matter of law on both its breach of contract claim, as well as its detrimental reliance claim (doc. 13). Accordingly, on October 2, 2000, Defendant filed a Response denying that Plaintiff was entitled to judgment as a matter of law because there are genuine issues of material fact which exist as to both asserted claims, and Defendant contends that it has asserted several affirmative defenses in its Answer that have not been addressed by Plaintiff in its Motion for Summary Judgment (doc. 16). Finally, Plaintiff filed a Reply on October 30, 2000, basically reasserting its previous arguments (doc. 17).

The following facts have been derived from the pleadings, motions, and affidavits in this case. Unless otherwise indicated, both Parties have presented these facts to the Court.

Both Plaintiff and Defendant utilize a manufacturing facility located at or near 4701 Paddock Road in Cincinnati, Ohio (docs. 1 & 3). Defendant receives and ships cargo to and from the facility while Plaintiff delivers to and/or removes cargo from the facility. Both Parties agree that each such transaction is conducted pursuant to at least a bill of lading or a contract of carriage between Plaintiff and Defendant.

On or before January 12, 1996, Plaintiff attempted to deliver tank car number GA25560 (hereinafter, the "Tank Car") to said facility at Defendant's request. The Tank Car was owned by General American Transportation Corporation, but was permanently leased to Defendant. At the time of delivery, this Tank Car possessed a latent defect in one of its handrails. This handrail is a safety device intended for use by railroad employees.

Sometime after 12:25 a.m. on January 12, 1996, the handrail on the B-end of the Tank Car was discovered to be broken. Plaintiff asserts that William Johnston, a yard conductor employed by Plaintiff was carrying out duties on the B-end of the Tank Car when the handrail broke and gave way, causing Mr. Johnston to fall from the car and sustain injuries as a result. In its Answer, Defendant asserts that it is without sufficient information to admit this allegation.

Beginning on January 16, 1996, Plaintiff began making repeated demands for Defendant to defend and indemnify it against any personal injury lawsuit that Mr. Johnston might file against Plaintiff regarding his injuries. Specifically, Plaintiff's letter to Defendant dated January 16, 1996, stated:

> Since your insured leases the railcar GATX 25560 and is responsible for the

maintenance of same, CSX Transportation will look to Occidental Chemical Corporation to defend, indemnify and hold harmless the railroad in this matter.

(doc. 16).

On February 6, 1996, Plaintiff sent a letter to GATX, the owner of the Tank Car inquiring about maintenance responsibility for the Tank Car (*Id.*). Mr. Johnston commenced suit against Plaintiff in this Court on May, 10, 1996, pursuant to the Federal Employers' Liability Act (hereinafter, "FELA"), Title 45 U.S.C. § 51 *et seq.*, for his injuries resulting from this alleged accident (docs. 13 & 16). Mr. Johnston also alleged violations of the Safety Appliance Act, then codified at 45 U.S.C. §§ I, *et seq.* (*Id.*).

On May 22, 1996, Plaintiff advised Defendant of the pendency of this lawsuit and again demanded that Defendant indemnify it, assume its defense, and hold it harmless for any claims by Mr. Johnston (*Id.*). This letter again stated that the reason for the demand was Defendant's position as lessee of the Tank Car and its corresponding maintenance responsibility (*Id.*). Finally, Plaintiff sent a letter to GATX essentially making the same demand based on GATX's status as owner of the Tank Car (*Id.*). Subsequently, Plaintiff undertook to defend itself in the litigation initiated by Mr. Johnston (*Id.*).

On August 6, 1996, Defendant advised Plaintiff in writing that it would assume the defense and indemnity of Plaintiff in regards to the Johnston FELA litigation (doc. 13). This letter states that: "[a]fter reviewing the appropriate documents and discussion with our legal staff, Occidental Chemical will assume the defense and indemnity of this matter for CSX railroad pursuant to the terms of our contract." (doc. 13). Defendant asserts that this writing conditioned such indemnity and assumption of defense "pursuant to the terms of the contract." (doc. 3).

According to Defendant, the contract to which it was referring was a "side-track agreement" between Plaintiff and Defendant binding it to defend and indemnify Plaintiff that the Parties erroneously believed existed at this time (doc. 16). Plaintiff asserts that the assumption stated in the August 6, 1996, letter was "without any qualification, reservation, condition, exception, disclaimer or other limitation." (doc. 1).

At this point, Defendant requested that its own counsel replace that of Plaintiff (docs. 1 & 3). This substitution was made (*Id.*). On July 7, 1997, Mr. Johnston filed an Amended Complaint adding the Defendant in this action as a party-defendant to his court action, and asserting a claim for common law negligence pursuant to Ohio law (*Id.*). Defendant's counsel continued to represent both Plaintiff and Defendant in said action for approximately eighteen months (*Id.*).

Defendant contends that on March 26, 1998, approximately two months prior to the scheduled trial, Defendant alleged that it had been mistaken in its belief that it had a contractual obligation to defend and indemnify Plaintiff (doc. 3). Therefore, Defendant informed Plaintiff, both orally and in writing, that it would no longer defend or indemnify Plaintiff (docs. 1 & 3). On March 30, 1998, Plaintiff, in writing, refused to accept Defendant's assertion that it had no legal duty to defend or indemnify Plaintiff and demanded that Defendant continue its defense on behalf of both Plaintiff and Defendant in regards to the Johnston litigation (docs. 3 & 5).

The Johnston trial was scheduled to begin on June 1, 1998, and a court-sponsored mediation was scheduled for April 1, 1998 (docs. 1 & 3). During the course of this trial, this Court ruled that the condition of the Tank Car violated the Safety Appliance Act, 45 U.S.C. §§ I, *et seq.*, as a matter of law (*Id.*). The Court further ruled that this violation imposed liability on Plaintiff irrespective of any fault or

negligence on Plaintiff's part and directed a verdict of liability against Plaintiff (*Id.*).

Plaintiff subsequently entered into a settlement agreement in the amount of $400,000 with Mr. Johnston on behalf of both Plaintiff and Defendant and the claims against Defendant were dismissed with prejudice by this Court (*Id.*). Both Parties agree that this amount was a fair and reasonable amount for the settlement of that case (docs. 13 & 16). Thereafter, Plaintiff demanded that Defendant pay the sum of $400,000 and such demand was subsequently refused by Defendant (docs. 1 & 3).

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. *Guarino,* 980 F.2d at 410; *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir. 1991).

## DISCUSSION

Plaintiff has moved for summary judgment on the issue of liability only (doc. 13). Any discussion of liability should first address the legal status of the August 6, 1996 letter from Defendant to Plaintiff which purportedly pledges Defendant to defend and indemnify Plaintiff in regards to the Johnston litigation. Indeed, both Parties' legal arguments center on precisely this issue and what effect this letter has on the Parties' course of dealing. According to Plaintiff there are two possible ways to construe this letter, which we will address later.

As an initial matter, Plaintiff claims that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on two causes of action: 1) breach of contract and 2) promissory estoppel (doc. 13).

First, Plaintiff asserts that there are sufficient stipulated facts to establish both the existence and the breach of a contract requiring Defendant to defend and indemnify Plaintiff in a personal injury lawsuit filed by Mr. Johnston (*Id.*). Next, Plaintiff contends that all of the stipulated facts in the record clearly establish an equitable claim for promissory estoppel under Ohio law (*Id.*).

The Court finds that Plaintiff has met its burden as to both its breach of contract claim as well as its promissory estoppel claim, and Defendant has correspondingly failed to demonstrate any material factual issues which defeat Plaintiff's claims, and therefore, we conclude that Plaintiff is entitled to summary judgment as a matter of law for the following reasons.

First, Plaintiff has clearly presented enough facts that are stipulated in the record to establish both the existence and the breach of a contract. Second, even if Plaintiff has failed to establish a breach of contract claim, it has a valid cause of action for promissory estoppel. Each of these claims will be discussed in further detail below.

### A. *Breach of Contract*

■ Under Ohio law, there must be a "meeting of the minds" in order to form a legally binding contract. *Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726, 732 (1998) (citing *Ford v. Tandy Transp. Inc.*, 86 Ohio App.3d 364, 620 N.E.2d 996, 1006–07 (1993)). Expressions of assent are generally sufficient in order to demonstrate a meeting of the minds and Ohio law recognizes objective manifestations of intent. *Id.*

■ That is, "secretly held, unexpressed intent is not relevant to whether a contract is formed." *Id.* Under Ohio law, the essential terms of a contract are the parties to the contract and its subject matter, if the contract is not one for the sale of goods. *Id.* at 734. Furthermore, these elements are considered sufficiently certain if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.* (citing *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 464 N.E.2d 586, 589–90 (1983)).

■ A contract must also have consideration. Consideration under Ohio law "may consist either in the form of a detriment to the promisee or as a benefit to the promisor." *Id.* at 735. "The consideration given by each party in a contract need not be expressed and may be inferred from the terms and obvious import of the contract." *Id.*

■ However, in order to comprise consideration, the benefit or detriment must be something intended by the parties as such; it cannot be something merely incidental to the contract *Id.* "A detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promisee." *Crocker v. Hood*, 113 Ohio App.3d 478, 681 N.E.2d 460, 462 (1996). "Furthermore, any detriment, no matter how economically trifling, will support a promise." *Id.*

Ohio law recognizes two forms of contracts. A contract may be either bilateral or unilateral. Ohio has adopted the Restatement of the Law of Contracts approach. Section 12 of the Restatement states, in pertinent part:

[a] unilateral contract is one in which no promisor receives a promise as consideration for his promise. A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee.

*Bretz v. Union Central Life Ins. Co.*, 134 Ohio St. 171, 16 N.E.2d 272, 274 (1938).

As Plaintiff incurs the initial burden of eliminating factual disputes and demonstrating that it is entitled to judgment as a matter of law, we will discuss its arguments first.

■ Plaintiff contends that the undisputed facts above establish not only the existence, but the breach of an express written contract (doc. 13). First, Plaintiff contends that the letter of August 6, 1996, can be construed as a written contract (*Id.*). According to Plaintiff, this letter effectively released Defendant from any further liability in the Johnston case ,in exchange for Defendant's pledge of indemnification and defense (*Id.*).

According to Plaintiff, Defendant fully understood why Plaintiff felt Defendant was obligated to indemnify and defend Plaintiff in the Johnston case and that any mistake was only a unilateral one on Defendant's part. To establish this proposition, Plaintiff relies heavily on the deposition of Jerry Chabre, Adjuster for Crawford and Company, the Defendant's investigating and adjusting contractor (doc. 13).

According to Mr. Chabre's deposition, Mr. Chabre acknowledged that the repeated demands by Plaintiff for defense and indemnity were never predicated upon any contractual basis (*Id.*). According to Plaintiff, Mr. Chabre acknowledged to Plaintiff that Defendant was responsible for car maintenance (*Id.*). Mr. Chabre also admitted that he was thoroughly familiar with situations in which an insurer/indemnitor assumed a litigant's defense when some question existed as to whether the insurer/indemnitor would actually be liable (*Id.*).

Mr. Chabre also admitted to being familiar with the practice of directing "a reservation of rights" in this instance (doc. 13). Elizabeth Nelson, Account Administrator for the Occidental Dedicated Unit of Crawford & Company admitted in her deposition that she expected Plaintiff to rely on the August 6, 1996 letter and she appreciated the fact that, by such reliance, Plaintiff would relinquish control of its defense including the assertion of a third-party claim against Defendant (*Id.*).

Finally, according to Plaintiff, Mr. Joseph Cain, Assistant General Counsel for Defendant admitted in his deposition that he realized that the assignment of a single defense firm in this matter had the probable effect of precluding Plaintiff from asserting any claims against Occidental (*Id.*).

Plaintiff also identifies several memoranda circulated by Mr. Chabre. In a January 22, 1996 letter to his office file, Mr. Chabre notes that he had been advised that Defendant was responsible for inspecting the rail cars before they were used and further states that, "if it is the insured's responsibility, as it appears to be, to maintain and inspect the railroad cars and the claimant was using the handrail properly, we are going to have difficulty in arguing responsibility" (doc. 13).

Mr. Chabre also wrote a letter to Ms. Nelson on February 20, 1996, stating that, "the investigation we have developed indicates that the insured is responsible for the maintenance of the leased railroad car in question." (*Id.*).

The only element of a contract not explicitly stated in the August 6, 1996 letter is consideration. The Parties devote a great deal of time and effort discussing this element. According to Plaintiff, its demands for indemnity and defense stemmed from Defendant's liability to Mr. Johnston based on its status as lessee of the Tank Car. *See Ellison v. Shell Oil Co.*, 882 F.2d 349 (9th Cir.1989); *J.A. Indus., Inc. v. All Am. Plastics*, 133 Ohio App.3d 76, 726 N.E.2d 1066 (1999).

According to Plaintiff, it was this liability that formed the basis for Plaintiff's indemnification claim against Defendant (*Id.*). Plaintiff maintains that these cases establish that it is at least possible, if not probable, that Defendant had a legal duty to defend and indemnify Plaintiff (*Id.*). To strengthen this argument, Plaintiff has

presented evidence that every demand made to Defendant for indemnification called for Defendant to indemnify because of Defendant's status as the lessee of the Tank Car (doc. 13).

Defendant's recitation of its pertinent facts is obviously somewhat different from Plaintiff's. Defendant notes that Mr. Shipley, an agent of Plaintiff, in his deposition admits that, as part of his normal investigation, he searched for and was unable to locate a side-track agreement obligating Defendant to indemnify and defend Plaintiff (doc. 16). Defendant contends that Mr. Shipley also investigated the accident and that Mr. Shipley was intimately familiar with the investigation and handling of FELA claims by railroad employees. Defendant also points out that Mr. Chabre conducted an investigation of this accident, but that Mr. Chabre had very little experience with railroad accidents and had never investigated a FELA case (*Id.*).

According to Defendant, Mr. Shipley was unaware whether the maintenance responsibility for the Tank Car fell upon Defendant or the actual owner of the car and that it was Mr. Chabre who informed Mr. Shipley that Defendant was the one who had maintenance responsibility as between Defendant and the owner of the car (*Id.*). In addition, Mr. Shipley admitted in his deposition that Plaintiff had conducted repairs to the Tank Car on at least three prior occasions (*Id.*).

Defendant admits that on May 22, 1996, Mr. Shipley renewed his demand for defense and indemnity citing Defendants lease of the car and alleged responsibility for its maintenance but argues that Mr. Shipley did not know what the lease between Defendant and GATX said with respect to maintenance responsibility for the Tank Car (*Id.*). Defendant notes that Mr. Chabre was assisted by Elizabeth Nelson, who also had little experience with FELA or railroad cases (*Id.*).

Mr. Miles, Defendant's Casualty Claims Manager, testified in his deposition that it was his experience that there were often old, hard to locate side-track agreements which bind Defendants, like Occidental, to defend and indemnify railroad companies and that the responsible thing to do would be to assume Plaintiff's defense (*Id.*).

Defendant also asserts that Mr. Shipley admits in his deposition that he recognized that Defendant's assumption of the defense and indemnity of Plaintiff was qualified by the words "pursuant to the1 terms of the contract," but that he thought that the term might have referred to the contract of carriage between Plaintiff and Defendant, although he knew of no indemnification provision in that agreement (*Id.*).

Mr. Shipley also speculated that the contract might have been the lease agreement between Defendant and the owner of the Tank Car, or possibly a side-track agreement that his research had missed (*Id.*). However, Mr. Shipley admitted that he never inquired further as to the meaning of this term in the letter (*Id.*). According to Defendant, Mr. Shipley admits that he never obtained a copy of the contract of carriage between Plaintiff and Defendant (*Id.*).

Finally, Defendant points out that Mr. Shipley continued to manage the claim and assist defense counsel after Defendant took over the case (*Id.*). Indeed, according to Defendant, Mr. Shipley admits that he himself conducted all of the settlement negotiations with Mr. Johnston's attorney (*Id.*).

As to Plaintiff's contract claim, Defendant first argues that there was no written contract (doc. 16). Defendant further asserts that it owed no contractual or common law duty to defend and indemnify Plaintiff, and that, therefore, there was no consideration for any contract (*Id.*). Defendant devotes a great deal of its memoranda distinguishing factually the cases presented by Plaintiff purporting to establish Defendant's liability in the Johnston case (doc. 16).

According to Defendant, since there was no basis for liability, there was no benefit to Plaintiff, and, therefore, no consideration (*Id.*). Defendant disputes Plaintiff's contention that there must be an implied contract of carriage between itself and Defendant (*Id.*). Finally, Defendant asserts that the Railroad Transportation Agreement between Defendant and Plaintiff covers "all aspects" of Plaintiff's undertaking (*Id.*).

The thrust of Defendant's argument, however, is that no consideration was contemplated by either Party upon the drafting of the August 6, 1996 letter, and that, any incidental benefit to Plaintiff certainly was not bargained for by the Parties (*Id.*). Defendant argues that consideration was never bargained for as Ohio law requires. (*Id.*).

According to Defendant, the assertion by Plaintiff that a release of any common law liability of Defendant was the consideration of the agreement is flawed because there was no such common law right to recovery (*Id.*). Defendant proceeds to examine the cases cited by Plaintiff on this point and attempts to distinguish those cases factually (*Id.*). Defendant does concede, however, that "the decision to impose or not impose a duty in particular circumstances may be dictated by a variety of considerations, including the guidance of history, concepts of morals and justice, convenience of the rule, and social judgment as to who should bear the loss" (*Id.*).

According to Defendant, it does not matter that Plaintiff contemplated that it was giving up its legal rights in exchange for indemnification (doc. 16). Defendant contends that unless this is also what Defendant contemplated, then there is no consideration (*Id.*). In short, Defendant argues that there must be an explicit agreement amongst the Parties as to what will serve as consideration (*Id.*).

According to Defendant, one cannot simply determine that any benefit or detriment which happens to gravitate to one Party after the fact is indeed the consideration for the contract (*Id.*). Defendant contends that at the very least, this creates a question of fact, inappropriate for summary judgment (*Id.*).

Finally, Defendant argues that the doctrine of "mistake of fact" is applicable to the facts of this case (doc. 16). According to Defendant, both Parties made a mistake as to a basic assumption of the contract (*Id.*). Defendant contends that both Parties were operating on different assumptions regarding who had actual liability in this case (*Id.*). According to Defendant, this precludes a finding that the Parties ever had "a meeting of the minds."

Defendant contends that these are all factual issues that make summary judgment premature and improper in this case (*Id.*).

The Court finds that the undisputed facts demonstrate the existence of a contract between these Parties. The Court reaches this result for several reasons.

First, the undisputed facts demonstrate that a demand was made upon Defendant to defend and indemnify Plaintiff against the lawsuit by Mr. Johnston (docs. 1 & 3). Defendant has presented no evidence which disputes the evidence of Plaintiff that Defendant was both aware that Plaintiff was basing its demand for defense and indemnity on the perceived liability of Defendant to maintain the car, and that it was at least possible, if not probable, that such liability existed at the time.

Furthermore, Defendant has not offered any evidence to contradict Plaintiff's evidence that Defendant's agents in their decision-making process contemplated, based on Plaintiff's earlier assertions of Defendant's liability, that if Defendant undertook Plaintiff's defense, Plaintiff would effectively be barred from bringing suit against Defendant. Plaintiff has also presented uncontroverted evidence that Defendant's agents contemplated the possibility of Defendant's liability to Mr. Johnston for failure to inspect the Tank Car.

After this demand was made, Defendant made an offer to Plaintiff. This offer was in the form of the letter dated August 6, 1996. This letter stated Defendant's position in that it would defend and indemnify Plaintiff "pursuant to the contract." Contrary to Defendant's contention, this offer was clear and unambiguous in its terms.

Plaintiff had made a demand upon Defendant based on its status as owner/lessee of the Tank Car. Given this demand, it is clear that in the eyes of Plaintiff, this offer was in response to such demands. Ohio adheres to the objective manifestations of intent to form a contract. Here, all factors indicate that this letter dated August 6, 1996, was reasonably construed by Plaintiff as an offer. Clearly, Plaintiff's actions subsequent to this letter demonstrate its acceptance.

Second, the issue regarding adequacy of consideration does not involve the detailed analysis the Parties have afforded it. The question presented is, whether there was any possibility of liability, so that Defendant was receiving a benefit from the Plaintiff. In this regard, Plaintiff directs the Court to the case of *Ellison v. Shell Oil Co.*, 882 F.2d 349, (9th Cir.1989).

In *Ellison,* the appellate court, interpreting California law, determined that the owner of a rail car has at least some duty to prevent harm to others by the use of its cars even when those cars are in the possession of a railroad. *Id.* Plaintiff has also cited other cases describing situations in which an owner of a railroad car had some inspection duties. *Smith v. Louisville & Nashville R.R.,* 14 Ohio Misc. 57, 267 F.Supp. 716 (S.D.Ohio 1966); *Pennsylvania R.R. Co. v. Snyder,* 55 Ohio St. 342, 45 N.E. 559 (1896).

The Court notes that the facts and issues of this case also comports with traditional bailment principals. In *Hilleary v. Bromley,* 146 Ohio St. 212, 64 N.E.2d 832 (1946), the Supreme Court of Ohio held that a bailor has a duty to make a chattel which is the subject of a bailment safe for its intended purposes. *Id.* What is deter- minative here is that there was some possibility of liability, not that the Plaintiff conclusively demonstrated such liability.

This case presents a clear instance of one promise exchanged for another promise. Plaintiff promised to drop its claims of liability against Defendant in exchange for a pledge of defense and indemnification.

Defendant also presents the argument that somehow its pledge was conditioned by the terms "pursuant to the contract" (doc. 16). However, as Plaintiff correctly points out the law allows a party to condition performance in many ways. Professor Williston determined that, "any words will create a condition which express, when properly interpreted, the idea that the performance of the promise is dependent on some other event." *Williston on Contract* § 38.16 (4th Ed.2000).

"Although no particular words are necessary for the existence of a condition, such terms as 'if,' 'provided that,' 'on condition that,'" are typical *Id.* The Court does not believe that the words "pursuant to our contract" are sufficiently definite enough to place Plaintiff on notice that the promise contained in the August 6, 1996 letter was qualified. This could have easily been accomplished through a reservation of rights. It would not be a reasonable construction to construe "pursuant to our contract" as a reservation of rights.

Finally, Defendant counters that the doctrine of "mutual mistake of fact" applies to this situation. That doctrine, however, only applies to a basic mistake by both parties as to the subject matter of the contract. *See J.A. Industries,* 726 N.E.2d at 1072. In that case, the Ohio Court of Appeals stated that, "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party." *Id.*

The appellate court went on to state that "a party bears the risk of a mistake when he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." *Id.*; *see also Reilley v. Richards,* 69 Ohio St.3d 352, 632 N.E.2d 507, 509 (1994) (Bryant, J., dissenting).

Here, both Parties understood by the terms of the letter that Defendant was pledging to not only defend, but also indemnify Plaintiff against any loss. If there was any mistake, it was a unilateral one on the part of Defendant. In addition, by this statement of the rule, Defendant assumed the risk of any mistake in its understanding of its liabilities.

Defendant had only limited knowledge of the existence of a side-track agreement which it now asserts it believed existed. Defendant chose to proceed on this belief, without reserving any rights in the event that no such agreement existed. Plaintiff never made any demand based upon any such side-track agreement. Indeed, Defendant has offered no evidence suggesting that any employee of Plaintiff ever discussed a side-track agreement with Defendant.

Defendant could have easily notified Plaintiff of the possible existence of such an agreement by the use of a reservation of rights in its proposal. Defendant chose not to do so. There is also no evidence that Defendant ever notified Plaintiff on what basis it was making its offer. Therefore any mistake made in this regard was one born solely by Defendant, and, therefore, we find summary judgment to be appropriate in favor of Plaintiff as to this claim (*see* doc. 12).

### B. *Promissory Estoppel*

The Court realizes that it is often difficult to eliminate all factual issues from a case for purposes of summary judgment. The Court feels, however, that the only factual disputes in this case are minor and are not material to the legal issues at hand. In the event, however, that there is a genuine factual dispute regarding the existence of a contract, the Court, in the alternative, believes that it is clear that Plaintiff reasonably relied on the promises contained in the August 6, 1996 letter to its detriment.

Thus, a valid cause of action exists under Ohio law for promissory estoppel. There are no factual disputes regarding this cause of action and Plaintiff is also entitled to judgment as a matter of law on the claim of promissory estoppel (*see* doc. 13).

Plaintiff argues that through admissions, depositions and affidavits, it has established a cause of action for promissory estoppel under Ohio law. The Supreme Court of Ohio has adopted the Restatement of Contracts definition of promissory estoppel. The case law states, in pertinent part:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Talley v. Teamsters Local No. 377,* 48 Ohio St.2d 142, 357 N.E.2d 44 (1976) (citing Restatement (Second) of Contracts, § 90 (1973)).

This rule of law was again reiterated in *Insurance Co. of North Am. v. Travelers Ins. Co.,* 118 Ohio App.3d 302, 692 N.E.2d 1028 (1997). In this case, the appellate court, after stating the above rule, further added:

We find merit to Travelers' argument that INA's claim is precluded under the theory of promissory estoppel. It argues that since INA assumed Morse's defense upon the filing of the Brewer action, investigated the claim, and conducted discovery, it would be unfair and unreasonable now to allow INA to claim indemnification from Travelers. Prom-

issory estoppel would apply as stated in [Talley].

*Travelers Ins. Co.,* 692 N.E.2d at 1040 (citations omitted). It is significant to note that although, *Talley* dealt with an insurance context and *Travelers* extended this holding to dealings between two insurance companies, and not just between an insured and his insurance carrier. *Travelers,* 692 N.E.2d at 1040.

■ Thus, under Ohio law, to demonstrate promissory estoppel, the Plaintiff must demonstrate: 1) a promise, clear and unambiguous in its terms; 2) reasonable and foreseeable reliance; and 3) injury resulting from the reliance. *Nilavar v. Osborn,* 127 Ohio App.3d 1, 711 N.E.2d 726, 736 (1998).

■ Plaintiff contends that the undisputed facts in this case demonstrate that the elements of promissory estoppel have been met. Plaintiff maintains that the letter dated August 6, 1996, clearly demonstrates a clear and unambiguous promise that reasonably induced reliance (doc. 13).

According to Plaintiff, Defendant clearly and unambiguously promised to undertake Plaintiff's defense in the Johnston suit and also promised to indemnify and hold harmless Plaintiff against any claims that arose therefrom. Plaintiff also contends that it was justified in relying on this promise. Plaintiff cites case law that it asserts entitles it to reliance as a matter of law. *See, e.g., Travelers Ins. Co.,* 692 N.E.2d at 1040 (1997).

Finally, Plaintiff asserts that at the point that the promise to defend and indemnify was revoked, Plaintiff was precluded, as a matter of law, from bringing suit against Defendant (*Id.*). This is because at that point in the Johnston litigation, the time had already passed for Plaintiff to file a third-party complaint against Defendant as it would have done if Defendant had not guaranteed to indemnify it against any loss.

According to Plaintiff, there was a plausible legal argument that Defendant, and not Plaintiff, was the actual party-defendant who was legally responsible for Mr. Johnston's injuries. *See Ellison,* 882 F.2d at 349; *Louisville & Nashville R.R.,* 267 F.Supp. at 716; *J.A. Industries, Inc.,* 726 N.E.2d at 1066; *Pennsylvania R .R.,* 45 N.E. at 559.

It was this possibility of including Defendant in Mr. Johnston's lawsuit that provides the basis for Plaintiff's damages. Defendant presents at least three reasons why promissory estoppel is inapplicable to this case (doc. 16).

First, Defendant asserts that there was no clear and unambiguous promise (*Id.*). According to Defendant, the words "pursuant to the contract" created an ambiguity as to just what it was that Defendant was promising (*Id.*). Defendant contends that this term may have meant "pursuant to a lease agreement" between Defendant and GATX, or the term could have referred to a "contract of carriage" between Plaintiff and Defendant (*Id.*). Defendant asserts that this ambiguity creates a question of fact as to what the promise actually was for (*Id.*).

Defendant also asserts that under these circumstances, it was not reasonable to rely on this promise. According to Defendant, determination of reasonableness is a fact question (*Id.*). *See Hawley v. Dresser Indus., Inc.,* 737 F.Supp. 445, 464 (S.D.Ohio 1990). "Normally, the reasonableness of a plaintiff's reliance is a question of fact . . . inappropriate for summary judgment." *Hawley,* 737 F.Supp. at 464.

Finally, Defendant argues that there has been no injury or injustice to Plaintiff. This is because there was no legal basis for recovery by Plaintiff from Defendant (*Id.*). Defendant notes that, Ohio law requires that a forbearance be of "a sufficiently definite and substantial nature so that injustice will result if the promise is not enforced." *Talley,* 357 N.E.2d at 47. Defendant contends that there has been no wrong for which equity demands a right (*Id.*).

According to Defendant these three factual questions preclude summary judgment (*Id.*). Therefore, contends Defendant, Plaintiff's Motion must be denied.

The Court believes that Plaintiff has met its burden in this instance. The undisputed facts are as follows:

1. Accident occurs causing injury to Mr. Johnston while working on a railcar leased by Defendant and in the possession of Plaintiff railroad company (docs. 1 & 3).

2. Plaintiff demands indemnification from lessee of said railroad car. Lessee replies agreeing to indemnify and defend "pursuant to the contract" (*Id.*).

3. Plaintiff accepts such representation forgoing any rights to bring Defendant into the suit or sue on its own behalf (*Id.*).

4. Defendant cancels eighteen months later, two months before trial, for the first time asserting that it was mistaken and was never legally bound to either defend or indemnify (*Id.*).

5. Plaintiff makes a demand for the amount of the settlement that it entered. Defendant refuses (*Id.*).

The Court believes that this promise was clear and unambiguous in its terms. As discussed above, case law in Ohio recognizes a variety of ways in which one may qualify a promise. Given the context of this communication, no reasonable trier of fact could determine that Defendant was purporting to do anything less than indemnify and defend Plaintiff in this matter.

This is strengthened when one looks at the actions of the Parties after this communication. Defendant went so far as to hire counsel for Plaintiff and continue this representation for one year (docs. 13 & 16). Defendant's agents have admitted that they were aware that Plaintiff had an opportunity to file a cross-claim or third-party complaint, but did not (*Id.*).

Furthermore, Defendant's agents admitted that they were aware that Plaintiff had based its demands for indemnification and defense on the preexisting relationship between Plaintiff and Defendant, and not necessarily on any side-track agreement between Plaintiff and Defendant (*Id.*). Therefore, the promise to defend and indemnify was clear and unambiguous.

According to Defendant's theory, by the use of its own ambiguous language, which Defendant, itself admits was based on an erroneous assumption, Plaintiff was to realize that there was some other, outside condition that would allow withdrawal at the eleventh hour. This is simply unreasonable. If, as Defendant contends, it was unsure whether it was legally bound to defend, it could have included a reservation of rights provision in the letter dated August 6, 1996. It did not.

No reasonable trier of fact could determine that Plaintiff was not justified in relying on this promise.

The Court also notes that this decision is in conformity with *Ins. Co. of North Am. v. Travelers Ins. Co.*, 118 Ohio App.3d 302, 692 N.E.2d 1028 (1997). In *Travelers,* the Ohio Court of Appeals extended the traditional protection between an insurer and insured to two insurance companies. *Id.* at 1035. The appellate court was faced with a situation where one insurance company agreed to defend a secondary insurer. *Id.* Approximately one year later (and two months before trial), the insurer decided that it was not liable for coverage and that it would no longer defend the action. *Id.* The court concluded that, because INA did not reserve its rights, "at the point INA assumed the defense, it did so as a volunteer" *Id.* The Court went on to state that "INA gives no indication why it would take one year to determine something that any diligent insurance company would, as a matter of good practice, determine at the outset of any demand for a defense." *Id.*

Essentially, the court held that when between two sophisticated parties, one of the parties agree to defend and indemnify

the other without a waiver of rights, the promisee is entitled to rely on that promise and act as though he is out of the action. *Id.* The court further stated:

> A party to litigation who parts with his right to conduct his defense to another, gives up a valuable right. So it is that where an insured surrenders to the insurer the right to conduct his defense in an action which he believes to be within the policy coverage and the insurer undertakes such defense and continues to act for a considerable period of time without giving notice of any reservation of rights, it is conclusively presumed that the insured has been prejudiced.

*Id.* at 1040 (citations omitted). The Court went on to determine that Travelers was entitled to judgment on its promissory estoppel claim under Restatement of Contracts § 90. *Id.* at 1041.

As discussed earlier, the Court finds that no reasonable trier of fact could determine that, after an entire year of defense, it was unreasonable for Plaintiff to rely on Defendant's clear and unambiguous promise to its detriment. The facts establish that this situation is analogous to the *Travelers* case in that Defendant pledged to defend and indemnify Plaintiff in this action. It is clear that Plaintiff gave up a valuable right in reliance on this promise. That right was the right to conduct its own lawsuit. Clearly, the Parties' interests were not the same in this case.

Plaintiff, very early in the litigation, waived any rights it had to seek contribution from Defendant. Although, as the Court has previously determined, it is uncertain whether or not Defendant would have indeed actually been liable to Mr. Johnston for his injuries, that issue has not been conclusively determined by this Court. Plaintiff quite reasonably believed that it was participating in a united front against Mr. Johnston's lawsuit. In reality, Plaintiff was prevented from asserting any claim whatsoever against Defendant, based on Defendant's prior promise to defend and indemnify. Plaintiff was damaged in this respect.

## CONCLUSION

Accordingly, having reviewed this matter and for the forgoing reasons, Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED as to the breach of contract claim, and, in the alternative, the promissory estoppel claim (doc. 13). The Court determines that Plaintiff is entitled to judgment as a matter of law as to the liability of Defendant for those claims.

Accordingly, Defendant's Motion for Oral Arguments (doc. 19) is hereby DENIED due to the fact that the Court was able to sufficiently determine the Parties' disputed and varied facts, arguments, issues, and conclusions without the need for a hearing on Plaintiff's Motion. Furthermore, the Court SETS the following briefing schedule on the issue of damages. Plaintiff is to submit its memorandum in support of damages on Tuesday, February 6, 2001. Defendant's response is due no later than February 13, 2001, followed by any reply, if needed, is due by February 20, 2001.

SO ORDERED.