OPINION
{¶ 1} Plaintiff-appellant, The Ohio Bank, nka Sky Bank-Ohio Bank Region ("Bank"), appeals from an action based on its rights as the holder of a note. In that action, the Logan County Common Pleas Court granted summary judgment in favor of Defendant-Appellee, Martha J. Beltz, individually, and as the executrix of the estate of Stephen L. Beltz. Because material issues of fact remain as to (1) whether the terms of the underlying agreement and circumstances presented herein entitled the Beltzs to treat the agreement as though it had failed or were excused from performing thereunder, (2) whether the Beltzs' acceptance and retention of benefits from the transaction may operate to estop them from denying the obligations imposed by the same contract or transaction, and (3) discrepancies between documents concerning the note upon which the Banks seeks to recover, we must reverse the entry of summary judgment.
 {¶ 2} Facts and procedural history relevant to issues raised on appeal are as follows: On October 18, 1999, Stephen Beltz signed a purchase order for a 1999 Ford Ranger from Statewide Ford Mercury ("Statewide") in Kenton, Ohio, for $21,000. At that time, Mr. Beltz prepared an application for credit with and executed a note to the Bank in the amount of $24,133.70, to finance the transaction. Of the loan proceeds, $14,121.14, was to be applied to satisfy an existing loan Mr. Beltz had with Ford Motor Company, which was secured by a 1997 Ford Ranger that was traded-in for the new truck. The Bank rejected the application that same day. Statewide then advised the Beltzs that it would be necessary for Mrs. Beltz to sign the promissory note in order to obtain financing. On October 19, 1999, Mrs. Beltz came to Statewide and signed the note, the 1997 Ford Ranger was turned in to the dealership, and the Beltzs took possession of the 1999 Ford Ranger.
 {¶ 3} Eleven days later, on October 30, 1999, the Beltzs received notice from the Bank indicating that their credit application had been denied. At about the same time, Statewide contacted the Beltzs and requested the immediate return of the 1999 Ford Ranger. Shortly thereafter, the Beltzs were again contacted by Statewide, who informed them that the Bank had made an error in reviewing the credit applications and had since decided to accept Mr. Beltz's individual application.
 {¶ 4} The Bank's amended complaint confirms that they had initially denied the loan because of excessive loan obligations in relation to Mr. Beltz's income. After the initial denial, Statewide indicated that the outstanding loan on the 1997 Ford truck would be paid off, which would reduce Mr. Beltz's outstanding loan obligations and permit approval of the loan. The Bank has indicated that on or about November 2, 1999, Statewide sent loan documents to the bank and requested payment for the financed vehicle. However, because the loan application and promissory note were in the names of both Mr. and Mrs. Beltz and the Bank had approved the loan in just Mr. Beltz's name, the Bank returned the documents to Statewide for corrections and resubmission of the loan application.
 {¶ 5} When Mr. Beltz refused Statewide's request to sign a new application and contract, the dealership sent a letter stating: "On October 18, 1999, you signed the enclosed contract to purchase a new Ford Ranger pick-up truck from Statewide's store in Kenton, Ohio. Enclosed is a copy of the purchase agreement and your signed promissory note.
 {¶ 6} "As you know[,] Statewide submitted your application for credit to The Ohio Bank, who initially denied it. The Bank indicated that they wanted your wife on the loan, too. Based upon that, you were asked to have your wife sign the purchase contract and loan application, which she did on October 19, 1999.
 {¶ 7} "Statewide was led to believe that credit would be issued to one or both of you, and as a result, Statewide permitted you to take possession of the 1999 Ranger truck. They also took your old truck in trade, and paid off the loan on it."
 {¶ 8} "The Ohio Bank then notified Statewide that your joint credit application was rejected. However, after reviewing your own application again, The Ohio Bank apparently realized it had made an error in reviewing just your credit, and they have since decided to accept your individual application for credit.
 {¶ 9} "Statewide's salesman recently stopped by your residence to have you sign a new credit application, and contract to take care of this, but you refused to sign these documents.
 {¶ 10} "At this time you have Statewide's 1999 Ford Ranger, and you have not paid for it.
 {¶ 11} "As I see it, you have three choices. First, by the close of business on Monday, you will need to stop at Statewide to sign a new contract and loan application in your name only. Once you do this, the 1999 Ford Ranger will be paid for with your loan and title to it will be issued to you.
 {¶ 12} "Or, second, by the close of business on Monday, you can re-deem your old truck and re-institute your old loan with Ford Motor Company in the amount of $14,121.00; and, return the 1999 Ford and pay Statewide $49.95 per day since October 18, 1999, as and for rent for it; and, pay $.15 per mile for every mile in excess of 100 miles per day since you have had possession of it; and, pay for any damages you may have caused to this truck while it has been in your possession.
 {¶ 13} "Or third, and the least desirable choice for both parties, is for you to do nothing. If that is your choice, then further legal action will be taken against you."
 {¶ 14} The Beltzs returned the 1999 Ford Ranger on November 9, 1999, but did not retrieve the 1997 Ford Ranger or reaffirm their indebtedness thereon.
 {¶ 15} On November 18, 1999, the Bank sent a check for the loan proceeds to Statewide. The Bank claims that Statewide did not notify it that the vehicle had been returned to the dealership before the Bank financed the purchase and had represented at all times that the Beltzs had possession of the vehicle and were in agreement with the Note. On or about November 30, 1999, the Bank sent Mr. Beltz a past due notice on the purported loan. Statewide paid the first installment of the loan. Having received no further payments, the Bank repossessed the vehicle on March 7, 2000, subsequently sold it at auction for $10,000, and applied the auction proceeds to the balance of the note, leaving a deficiency on the note of $15,096.87.
 {¶ 16} On June 26, 2000, the Bank filed suit against Stephen and Martha Beltz, seeking to enforce the terms of the note. Martha Beltz, as executrix of the estate of Stephen Beltz, was subsequently substituted for Stephen Beltz. The Appellees answered the complaint, including therewith various counterclaims against the Bank and a third-party complaint against Statewide. The Bank subsequently amended their complaint to include claims against Statewide. Competing summary judgment motions were submitted before the trial court. The trial court concluded that any purported agreement failed for lack of consideration, dismissed the Bank's claims with prejudice, found there was no just cause for delay, and continued the matter for proceedings involving the Appellees' counterclaims against the Bank. The instant appeal followed.
 {¶ 17} Because the arguments presented by the Bank in the following consolidated assignments of error are interrelated, we have elected to address them simultaneously:
 {¶ 18} "The trial court erred in sustaining Defendants-Appellees' (Beltz) motion for summary judgment against Plaintiff-Appellant (Sky Bank) by finding that:
 {¶ 19} "1. There was a failure of consideration to support the existence of a legal obligation from Beltz to Sky Bank to repay funds advanced by Sky Bank on behalf of Beltz.
 {¶ 20} "2. There was no genuine issue of material fact raised by the evidence submitted concerning the failure of consideration between the parties.
 {¶ 21} "3. There was no genuine issue of material fact raised by the evidence submitted concerning whether Beltz properly rescinded the loan agreement with Sky Bank by returning the vehicle purchased without repayment of the funds advanced by Sky Bank on behalf of Beltz."
 Summary Judgment Standard {¶ 22} It is well-established under Ohio law that a court may not grant a motion for summary judgment unless the record demonstrates: (1) that no genuine issue of material fact remains to be litigated; (2) that the moving party is entitled to judgment as a matter of law; and (3) that, after construing the evidence most strongly in the nonmovant's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[1] In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmovant.[2] Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the adverse party.[3] Appellate review of summary judgment determinations is conducted on a de novo basis;[4] therefore, this Court considers the motion independently and without deference to the trial court's findings.[5]
 {¶ 23} The Bank's action is predicated upon its rights as the holder of the note executed by the Beltzs in conjunction with their original offers to purchase the 1999 Ford Ranger. However, because of the Bank's involvement in and knowledge of facts underlying the transaction, it is not a holder in due course and holds the note subject to all valid claims and defenses that would be available if it was attempting to enforce the right to payment under a simple contract.[6]
In this instance, the Beltzs contend that their offer was rejected, thereby preventing the formation of a contract, and that the instrument was issued without consideration.[7] Therefore, as the trial court's determination indicates, the initial inquiry in this matter is whether there is an enforceable agreement upon which the Bank may pursue its claims.
 {¶ 24} "It is axiomatic that the formation of a contract is dependent upon both offer and acceptance."[8] To constitute a valid contract, there must be an offer on the one side and an acceptance on the other, resulting in a meeting of the minds of the parties.[9] "[W]hen the [offeree] has once rejected the offer it can not afterwards be revived by the mere tender of an acceptance of it."[10] "[I]t is elementary that a refusal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiations unless the party who made the original offer renews it, or assents to the modification suggested."[11] In addition, the contract must be supported by sufficient consideration. "Consideration may consist of either a detriment to the promisee or a benefit to the promisor. A benefit may consist of some right, interest or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promisee."[12]
 {¶ 25} The record herein supports that the Beltzs submitted an offer to purchase the vehicle to Statewide and that the dealership had accepted their offer, contingent upon the Beltzs being able to secure financing for the purchase. We do not, however, have before us a copy of the purchase agreement; therefore, we are unable to determine the nature of the contingency or whether the Beltzs were entitled to treat the agreement as though it had failed or were excused from performing thereunder upon the Bank's initial denial of the parties' credit application. The nature of the condition and its effect upon the agreement is a question of intent, to be ascertained by considering the language of the provision, the entire agreement, and the subject matter of the agreement.[13]
 {¶ 26} Moreover, even if the Beltzs were entitled to treat the agreement as though it had failed or were excused from performing thereunder, the terms contained within the November 5, 1999 letter from Statewide could reasonably be construed as an offer for the sale of the 1999 truck under the original terms of the agreement. In response thereto, the Beltzs elected to return the 1999 truck, an initial expression of an intent to reject the offer. However, for reasons that are not apparent from the record, the Beltzs did not retrieve the 1997 truck and did not reaffirm their corresponding indebtedness. Contrary to the trial court's findings, the satisfaction of the existing loan on the 1997 truck certainly provided partial consideration for the transaction between Statewide and the Beltzs. As a result, we are potentially confronted with a situation in which a party to a transaction has retained a benefit therefrom while attempting to refute or reject the contract.
 {¶ 27} As a general principle, "a party cannot be permitted to retain the benefits of a contract and at the same time repudiate it or reject its burdens."[14] Courts have long recognized that "a party who accepts the benefits of a contract or transaction will be estopped to deny the obligations imposed on it by the same contract or transaction."[15] The principles of estoppel by acceptance of benefits, "quasi-estoppel," "estoppel in pais," or "equitable estoppel," have been recognized under varying circumstances.[16] The Ohio Supreme Court has noted that in the "acceptance of benefits" or "quasi-estoppel" situation, strict adherence to some of the elements of technical estoppel, such as knowledge and reliance, may not be required for the doctrine to be invoked,[17] describing the application of these principles as follows:
 {¶ 28} "Of course, in technical estoppel, the party to be estopped must knowingly have acted so as to mislead his adversary, and the adversary must have placed reliance on the action and acted as he would otherwise not have done. Some authorities, however, hold that what is tantamount to estoppel may arise without this reliance on the part of the adversary, and this is called ratification, or election by acceptance of benefits, which arises when a party, knowing that he is not bound by a defective proceeding, and is free to repudiate it if he will, upon knowledge, and while under no disability, chooses to adopt such defective proceeding as his own. Such conduct amounts to a ratification. Estoppel proceeds on the theory that the party's conduct has induced his adversary to take certain action on the faith of it, and that it would work injury to his adversary if the party were not compelled to be bound by such conduct. This element of knowledge and reliance upon the part of the adversary may not be present in ratification. Ratification means that one under no disability voluntarily adopts and gives sanction to some unauthorized act or defective proceeding, which without his sanction would not be binding on him. It is this voluntary choice, knowingly made, which amounts to a ratification of what was thereafter unauthorized [or defective], and becomes the authorized act of the party so making the ratification."[18]
 {¶ 29} Accordingly, "[f]or an estoppel by acceptance of benefits to arise, [where a party has an election to adopt one of two inconsistent courses of action] the party accepting such benefits must do so with full knowledge of the facts and of his rights."[19] As mentioned previously, the record herein evidences the Beltzs' receipt and retention of the benefit of the satisfaction of their existing loan for the 1997 Ford Ranger, which constituted partial consideration for and resulted directly from the transaction between the parties. The record does not, however, contain sufficient information to determine whether the Beltzs retained this benefit with full knowledge of the facts and of their rights or whether they had the ability to "reaffirm" their loan with Ford Motor Company or could have obtained financing for the 1997 Ford Ranger for an amount which appears to significantly exceed its value.
 {¶ 30} Finally, the Beltzs attached to their summary judgment motion a copy of the credit denial they received on October 30, 1999. The credit denial purports to correspond to application number 6000192118, applicant Stephen Beltz, dated October 18, 1999, for the amount of $25,739.00. In comparison, the note attached to the Bank's complaint, upon which it seeks to recover, indicates that the note corresponds to application number 6000191438, applicants Stephen and Martha Beltz, also dated October 18, 1999, but for the amount of $24,133.70. The Bank claims that reasonable minds could conclude that the Beltzs made two separate loan applications for credit, one of which was denied while the other was accepted. Although Martha Beltz provided an affidavit wherein she averred that she and her husband signed only a single note, i.e., the note attached to the Bank's complaint, and the Bank has indicated that after denying the original application it had approved the loan only in the name of Stephen Beltz, when the note attached to the complaint lists Stephen and Martha Beltz, the discrepancies in these documents present material issues to be addressed by the trial court upon remand.
 {¶ 31} Accordingly, because the existence of material issues of fact outlined herein preclude an entry of summary judgment, the Bank's assignments of error are well taken.
 {¶ 32} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the Logan County Common Pleas Court is hereby reversed and the cause is remanded for further proceedings in accordance with this opinion.
Judgment reversed and cause remanded.
SHAW, P.J., and HADLEY, J., concur.
[1] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-687.
[2] Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7.
[3] Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485.
[4] Griner v. Minster Bd. of Edn. (1998), 128 Ohio App.3d 425,430.
[5] J.A. Industries, Inc. v. All American Plastics, Inc. (1999),133 Ohio App.3d 76, 82.
[6] R.C. 1303.31; 1303.23; 1303.35; 1303.36.
[7] R.C. 1303.33(B).
[8] Univ. Hosps. of Cleveland, Inc. (2002), 96 Ohio St.3d 118, 130, 220-Ohio-3748, at ¶ 62, citing 1 Corbin on Contracts (Rev.Ed. 1993), Sections 3.18 and 3.28.
[9] Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79.
[10] Id. (citation omitted).
[11] Brush Elec. Light Co. v. City of Cincinnati (1892), 11 Ohio Dec. Reprint 581, 28 W.L.B. 29; 17A Am. Jur.2d Contracts § 68, Effect of Revocation or Rejection of Offer (2002).
[12] Brads v. First Baptist Church (1993), 89 Ohio App.3d 328, 336
(citations omitted); see, also, Irmwin v. Lombard Univ. (1897),56 Ohio St. 9.
[13] See, e.g., Wrase v. Ardis (Jan. 17, 1992), Lucas App. No. L 90-335; Washington Cty. Agr. Mechanical Ass'n v. T.H.E. Ins.Co. (Dec. 22, 1992), Washington App. Nos. 92CA4, 92CA13.
[14] See, e.g., Buydden v. Mitchell (1951), 60 Ohio Law Abs. 493, citing K-W Ignition Co. v. Unit Coil Co. (1915), 93 Ohio St. 128; In reSchubert's Estate (1934), 32 Ohio N.P. 169, 1934 WL 1928.
[15] Dayton Securities Assoc. v. Avutu (1995), 105 Ohio App.3d 559, 563
(citations omitted).
[16] Hampshire Cty, Trust Co. of North Hampton, Mass. v. Stevenson
(l926), 114 Ohio St. 1, 14 (citations omitted).
[17] Id.
[18] Id., at 14-15.
[19] Dayton Securities Assoc., 105 Ohio App.3d 563, citing Brown v.Logan Clay Products Co. (App. 1929), 7 Ohio Law Abs. 515, and 42 Ohio Jurisprudence 3d (1983), Estoppel and Waiver, § 50. See also, McCahanv. Whirlpool Corp. (Aug. 29, 1996), Hancock App. No. 5-85-11.