**KREMEN, d.b.a Kremen Studio, et al.**

**v.**

**OHIO EXPOSITIONS COMMISSION.**

Court of Claims of Ohio.

No. 95–02154.

Decided Sept. 11, 1996.

*John W. Ferron* and *Anna M. Seidensticker*, for plaintiffs.

*Betty D. Montgomery*, Attorney General, and *Velda K. Hofacker*, Assistant Attorney General, for defendant.

FRED J. SHOEMAKER, Judge.

The court conducted a trial to determine whether defendant, the Ohio Expositions Commission ("OEC"), is liable for damages resulting from the leasing of commercial space to Gary Kremen, d.b.a. Kremen Studio, and Gator Tropics, Inc. during the 1993 Ohio State Fair.

The incidents giving rise to plaintiffs' cause of action occurred from April 1993 through the completion of the 1993 Ohio State Fair. Both plaintiffs assert damages premised upon the same legal principles; however, each entered into its contract separately.

Kremen Studio is an art exhibit owned and operated by Gary Kremen. Its primary attraction is a sixty-two-foot-long painting titled "A Tribute to Prince William Sound," which Kremen created following the Exxon Valdez oil spill in Alaska. Kremen has developed the exhibit into an attraction where he also sells various prints and clothing items.

During the latter part of April 1993, Kremen's associate and friend, Danny Schmitz, telephoned the OEC as the result of information Kremen acquired by reading the "1992 Year–End Issue" of "The Amusement Business" trade publication, which, based upon attendance figures, ranked the 1992 Ohio State Fair number one nationally. Russell Rauch, OEC rental manager, testified that he spoke to Schmitz only regarding the possibility of paying Kremen Studio to have the exhibit at the 1993 fair. As a result of that conversation, Schmitz sent Rauch a letter summarizing their conversation, signed by Schmitz in a "representative capacity." In addition to the letter, Schmitz sent a video and copies of various news articles covering Kremen's attraction at state fairs and other events.

Upon receiving the information, Rauch sent Kremen Studio a vendor's application and a concessionaire's manual. On April 30, 1993, Kremen signed the vendor's contract and mailed it back to the OEC rental office with a $300 nonrefundable deposit and proof of insurance. OEC did not offer to pay Kremen Studio for its exhibit. Subsequent to filing the application and paying the deposit, Kremen contacted Rauch regarding a free camper and rental space. At no time did Rauch or Kathy Amsbaugh, an OEC rental office administrative assistant, represent to either Schmitz or Kremen the anticipated or past fair attendance figures.

Approximately four days after the opening of the 1993 Ohio State Fair, Kremen became concerned about the fair's attendance. Thereafter, Kremen complained to Rauch and requested a refund of his rental fee and service charges. Rauch indicated to Kremen that he would bring the request to the OEC's General Manager, Richard Frenette. Frenette did not refund Kremen's rental fee or service charges. Thereafter, Kremen circulated a flyer to other vendors at the fair scheduling a meeting at Kremen's exhibit. The flyer expressed dissatisfaction over OEC's alleged misrepresentation of the anticipated attendance figures for the 1993 fair. Additionally, the flyer also indicated that local attorneys would be present to provide guidance as to the vendors' rights. Approximately fifteen to twenty vendors attended, one of which was Gator Tropics, Inc.

Gator Tropics sells tropical plants, pedestals, pots and baskets. Jesse Morgan, owner and operator of Gator Tropics, Inc., and Steve Fitzpatrick, an associate, visited the OEC rental office on August 3, 1993, to inquire about the availability of commercial rental space at the 1993 fair. Morgan and Fitzpatrick first met with Amsbaugh. Later, they met with Rauch, who showed them a space in the Bricker Building, which is a large commercial building on the fairgrounds. After reviewing the space, Rauch offered Morgan the space for $4,715. Morgan indicated that he needed to discuss the venture with his colleagues. Rauch requested that Morgan notify him by noon the next day if he wished to rent the space. At no time did Rauch or Amsbaugh represent to Morgan or Fitzpatrick the anticipated or past attendance figures.

Morgan decided to rent only one-half of the space. He notified Rauch by telephone and signed a rental agreement on August 5, 1993. As set forth previously, Morgan attended the meeting held at Kremen's exhibit, which resulted in this lawsuit.

In counts one and two of their complaint, plaintiffs allege that OEC, by and through its employees, is liable for damages based upon misrepresentations of material fact and fraudulent inducement. Count three of plaintiffs' complaint sets forth a claim based upon unjust enrichment for monies received by OEC

from plaintiffs for the rental of the commercial space. Count four of plaintiffs' complaint asserts that OEC, through its agents and representatives, failed to ensure the dissemination of accurate information to the public. Last, in count five of their complaint, plaintiffs allege that OEC violated the Ohio Consumer Sales Practice Act as codified under R.C. 1345.01. Defendant denies any liability.

■ Because counts one and two are similar, the court shall address both simultaneously. As set forth in *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407, the first element plaintiffs must prove under a theory of fraudulent inducement is that an OEC employee made a representation regarding past and anticipated attendance figures. Based upon the testimony of various OEC employees and the credibility of the witnesses, the court finds that plaintiffs failed to prove that such representation was made. If anything, the court finds that, based upon his testimony, Kremen based his decision to enter into the contract upon Schmitz's conversation with OEC employees. However, Schmitz never testified at trial regarding representations made by Amsbaugh or Rauch. Regarding Gator Tropic, Inc., the court finds Morgan's testimony less than credible. The court finds that Gator Tropics, Inc. also failed to prove by a preponderance of the evidence that OEC employees represented past or anticipated attendance figures. The court finds that Morgan made a poor business decision. Not only did Morgan lack the experience to market his products at state fairs, but his inexperience also resulted in his ordering too much inventory.

Count three of plaintiffs' complaint is premised upon the equitable theory of unjust enrichment. However, as previously held above, the court finds that the contracts entered into by plaintiffs and OEC were not the result of fraudulent means. Therefore, the court shall not entertain plaintiffs' claim lying in equity where a legal remedy is applicable under contract law.

Count four of plaintiffs' complaint alleges that the OEC was negligent for disseminating to the public inaccurate information regarding 1992 fair attendance figures and anticipated 1993 fair attendance figures. In order for plaintiffs to prevail on their claim of negligence, they must prove by a preponderance of the evidence that defendant owed them a duty, that it breached that duty, and that the breach proximately caused their injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. The court finds that plaintiffs failed to prove a duty owed to them under the circumstances of this case. Therefore, plaintiffs' fourth count fails on its merits.

■ Last, plaintiffs allege that OEC employees violated the Ohio Consumer Sales Practice Act as set forth in R.C. 1345.01. The court finds that R.C. 1345.01 is inapplicable under the facts of this case. A "consumer transaction" is defined

by R.C. 1345.01(A) to be "[a] sale, * * * to an individual for purposes that are primarily personal, family or household * * *." It is clear to the court that plaintiffs entered into the transaction for commercial purposes, not for personal, family, or household purposes. Therefore, count five of plaintiffs' complaint is without merit.

Upon review of the evidence, the court finds that plaintiffs failed to prove by a preponderance of the evidence any claim set forth in their complaint.

Upon consideration of all the evidence and for the reasons set forth in the decision rendered concurrently herewith, it is ORDERED that judgment is rendered in favor of defendant and against plaintiffs. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

*Judgment for defendant.*