YO–CAN, INC. et al., Appellants,

v.

THE YOGURT EXCHANGE, INC. et al., Appellees.

[Cite as Yo–Can, Inc. v. The Yogurt Exchange, Inc.,
149 Ohio App.3d 513, 2002-Ohio-5194.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 90.

Decided Sept. 26, 2002.

514

Jacklynn Zarnick and Tammie Marie Jones, for appellants.

Samuel Amendolara, for appellee The Yogurt Exchange, Inc.

A. Ross Douglass, for appellees Robert and R. Lee Zabel.

Anthony Gemma, for appellees Edward Pancallo and Sam Lanasa.

---

VUKOVICH, Presiding Judge.

{¶ 1} Plaintiffs-appellants have appealed from the judgment of the Mahoning County Common Pleas Court that denied their motion for partial summary judgment and granted summary judgment in favor of defendants-appellees Robert Zabel, R. Lee Zabel, Sam Lanasa, and Edward Pancallo. In deciding this appeal, we must address three main issues: First, whether the Consumer Sales Practices Act ("CSPA") is applicable to the sale of a business franchise, and, if so, whether the officers of a corporation can be held liable for an alleged violation of the CSPA; second, whether the officers of a corporation can be held liable for an alleged violation of the Business Opportunity Plans Act ("BOPA"); and third, whether the officers of a corporation can be held liable for allegations of fraud regarding representations made and disclosures omitted during the sale of a franchise on behalf of the franchisor-corporation. For the following reasons, it appears that the CSPA is inapplicable to this case, the officers do not fit the definition of those liable under the BOPA, but the officers can be held liable for their own acts of fraud. Hence, summary judgment is affirmed in part, reversed in part, and this case is remanded.

## STATEMENT OF THE CASE

{¶ 2} The four above-named appellees are officers of The Yogurt Exchange, Inc. In the fall of 1988, Ronald and Veronica Dombrosky inquired about purchasing a franchise of The Yogurt Exchange. The Dombroskys took out a bank loan for approximately $102,000 in order to begin operations of the franchise. (As security for this loan, the Dombroskys pledged their retirement stocks, an $8,000 IRA, and their $38,000 residence, upon which foreclosure was ultimately imposed.) From the loan proceeds, the bank paid $15,000 directly to The Yogurt Exchange as a franchise fee.

{¶ 3} In March 1989, the Dombroskys incorporated their franchise as Yo–Can, Inc., and they opened for business the next month. Apparently, their capital was depleted within a matter of weeks. They then refinanced their loan with another bank in order to receive more capital. (Both banks are no longer parties to this case but were previously named as defendants on grounds of lender liability.) In October 1991, the franchise closed, and Yo–Can declared bankruptcy.

{¶ 4} In February 1991, the Dombroskys and Yo–Can filed this lawsuit, naming the following defendants: The Yogurt Exchange, Inc.; the four officers in

their representative and individual capacities; W.C. Zabel Company; Sterrett Watt, a fellow franchisee who initially encouraged the Dombroskys; and the two banks. In 1995, the trial court dismissed the complaint on the grounds that a bankruptcy suit acted as res judicata to the current suit as to all defendants. This court affirmed the dismissal as to one of the banks and reversed as to all other defendants. *Yo–Can, Inc. v. The Yogurt Exchange, Inc.* (Dec. 17, 1998), 7th Dist. No. 95CA72, 1998 WL 896547. The trustee in bankruptcy was then substituted for Yo–Can as a plaintiff.

{¶ 5} On June 12, 2000, plaintiffs filed a motion for partial summary judgment against The Yogurt Exchange and its officers in their representative capacity. The motion specifically stated that any issue of the officer's individual liability should be left for the jury. On September 6, 2000, Lanasa and Pancallo filed their joint memorandum in opposition.

{¶ 6} On October 23, 2000, in their joint opposition to plaintiffs' partial summary judgment motion, Robert Zabel and R. Lee Zabel countered for summary judgment. They alleged that they are officers who are immune from liability and that no evidence was presented that would present a genuine issue on piercing the corporate veil.

{¶ 7} On December 11, 2000, the court denied plaintiffs' motion for partial summary judgment and granted the Zabels' motion for summary judgment. Thus, on December 26, 2000, Lanasa and Pancallo moved for summary judgment on the same grounds as the Zabels had. Plaintiffs opposed this motion. On February 20, 2001, the court granted summary judgment in favor of Lanasa and Pancallo.

{¶ 8} Meanwhile, Watt, Sky Bank, and W.C. Zabel Co. were discharged as defendants for various reasons, none of which is being contested on appeal. This left only The Yogurt Exchange as a party. On April 12, 2001, a judgment entry was filed that stated that the case was settled (whereby The Yogurt Exchange agreed to pay plaintiffs $30,000). This judgment entry noted that the settlement would be set aside if the appellate court reversed on any issue. Plaintiffs (hereinafter "plaintiffs" or "appellants") timely appealed.

## SUMMARY JUDGMENT

{¶ 9} Pursuant to Civ.R. 56(C), summary judgment shall be rendered if the relevant documents show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Where reasonable minds can only come to a conclusion that is adverse to the nonmovant, summary judgment is proper. If a movant desires to obtain summary judgment, it should point the court towards the portions of the record, which can include pleadings,

that demonstrate the absence of a genuine issue for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. To avoid summary judgment, the nonmovant cannot rest on the mere allegations of the pleadings but must set forth specific facts by affidavit or otherwise showing a genuine issue for trial. Id. In reviewing the grant of summary judgment, this court applies a de novo standard of review. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 10} Appellants' first assignment of error contends:

{¶ 11} "The lower court erred in granting summary judgment to defendants Lanasa, Pancallo, Robert Zabel and R. Lee Zabel on the claims of the individual plaintiffs under the Consumer Sales Practices Act."

{¶ 12} This assignment corresponds to the first count of the complaint, which alleged violations of the Consumer Sales Practices Act, contained in R.C. 1345.01 et seq. In their motions for summary judgment, appellees generally alleged that they were not liable as officers of the corporation, even though they personally engaged in the acts constituting the basis for the complaint and even though the definition of "supplier" includes not only a franchisor but also a person engaged in the business of effecting or soliciting consumer transactions. See R.C. 1345.01(C). We need not address the validity of these propositions because, as will be explained infra, the transaction in this case does not meet the definition of a "consumer transaction." Hence, the CSPA is inapplicable to this case, and, thus, summary judgment was properly granted as a matter of law with regard to count one.

{¶ 13} As aforementioned, summary judgment is a determination as a matter of law. The appellate court reviews the grant of summary judgment de novo. Hence, we make our own decision on whether appellees were entitled to judgment as a matter of law on appellants' first count dealing with the CSPA.

{¶ 14} Under the CSPA, no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. R.C. 1345.02(A). A nonexhaustive list of examples of such acts or practices is contained in R.C. 1345.02(B) (we point out appellees' erroneous complaint that appellants failed to allege a specific statutorily listed practice). Moreover, no supplier shall commit an unconscionable act or practice in connection with a consumer transaction. R.C. 1345.03(A). A consumer transaction is defined as "a sale, lease, assignment, award by chance, or *other transfer* of an item of goods, services, *a franchise*, or an intangible, to an individual for purposes that are *primarily personal, family,*

*or household, or solicitation to supply any of these things.*"  (Emphasis added.)
R.C. 1345.01(A).

{¶ 15}  A sale or transfer (or solicitation of a sale or transfer) of the right to operate a yogurt-selling store under the name of The Yogurt Exchange is not "for purposes that are primarily personal, family, or household."  Apparently, the statute's use of the word "franchise" distracted both sides in this case.  See Black's Law Dictionary (6th Ed.Abr.1991) 454 (mentioning, besides the more popular thoughts on the definition of a franchise, that cable companies have been granted a franchise by the government to offer cable television services to households).  Not only must the thing sold or transferred fit into one of the listed categories, it must also be for purposes that are primarily personal, family, or household.

{¶ 16}  Besides relying on the plain language of the statute, we shall set forth other authority in support of our position.  The Second Appellate District refused to apply the CSPA where the software at issue was by its very nature only suitable for business applications.  *Barazzotto v. Intelligent Sys., Inc.* (1987), 40 Ohio App.3d 117, 120–121, 532 N.E.2d 148.  See, also, *Kremen v. Ohio Expositions Comm.* (1996), 81 Ohio Misc.2d 29, 33, 673 N.E.2d 1028 (refusing to apply the CSPA to a commercial lease of space at the state fair because it was not for family, household, or personal purposes).

{¶ 17}  A comparison to the Uniform CSPA may also be helpful.  After setting forth the "personal, family, or household" language in the definition of a consumer transaction, the Uniform Act then states "or that relate to a business opportunity that require both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged."  7A Uniform Laws Annotated, Business & Financial Laws (1999 Ed.), Uniform Consumer Sales Practices Act, 206, 210.  This Uniform Act was approved in 1970.  Ohio adopted the Act in 1972.  However, as can be seen from the language of R.C. 1345.01(A), Ohio specifically deleted the above-quoted section when it adopted the Uniform Act. See 7A Uniform Laws Ann., General Statutory Note, at 207 (noting that Ohio's CSPA contains numerous variations and omissions).  See, also, *Heritage Hills, Ltd. v. Deacon* (1990), 49 Ohio St.3d 80, 82, 551 N.E.2d 125 (quoting in dicta an Official Comment to the Uniform Law, which happens to contain a reference to solicitation of a business opportunity).

{¶ 18}  We also note that in *Heritage Hills,* the court held that a residential lease did not fall under the protections of the CSPA primarily because there exists a separate specific Act, R.C. Chapter 5321, which covers such transactions.  Id. at 83, 551 N.E.2d 125.  The court noted that the CSPA is broad and the Residential Landlord Tenant Act, which was specific to the facts of the case, controlled and preempted the field.  Id. The court so held even though the CSPA

states that its remedies are in addition to those otherwise available. R.C. 1334.15. Analogously, Ohio enacted the Business Opportunity Plans Act in 1979, which specifically has applicability to sales of business franchise agreements. R.C. 1334.01 through 1334.99. This Act is the subject of the second assignment of error and therefore will be analyzed infra.

{¶ 19} For all of the preceding reasons, the CSPA is inapplicable to the sale of a franchise for a yogurt-selling store. Most specifically, the CSPA is inapplicable because the transaction herein does not have the required characteristic of being primarily for purposes that are personal, family, or household. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 20} Appellants' second assignment of error provides:

{¶ 21} "The lower court erred in granting summary judgment to defendants Lanasa, Pancallo, Robert Zabel, and R. Lee Zabel on the claims of plaintiff under the Ohio Business Opportunity Act and in denying plaintiff's motion for partial summary judgment under the Act."

{¶ 22} This assignment corresponds to the second count of the complaint, which alleged violations of the Business Opportunity Plans Act, contained in R.C. 1334.01 et seq. Plaintiffs sought partial summary judgment on the issue of whether the BOPA was violated by The Yogurt Exchange and its representatives for failure to comply with certain statutory disclosures. The defendants also sought summary judgment on this issue. The trial court granted summary judgment to the officers on the BOPA allegations because they did not fit the statutory definition of "sellers" or "brokers." Prior to delving into the propriety of that decision, we shall note what is not at issue here.

{¶ 23} Although the trial court granted summary judgment for the officers, it denied The Yogurt Exchange's motion for summary judgment on plaintiffs' BOPA allegations. It also denied plaintiffs' motion for summary judgment on this claim. Thereafter, The Yogurt Exchange and the plaintiffs settled the case. The settlement entry states that the settlement is rescinded if the appellate court reverses any issue in the case; however, this provision applies only to the appealed issues concerning the grant of summary judgment for the other defendants who were not part of the settlement agreement.

{¶ 24} Thus, plaintiffs' appeal cannot complain about the denial of summary judgment with regard to The Yogurt Exchange, as any decision by us would be advisory. We are making this observation only because the conclusion section of appellants' brief argues that summary judgment should have been granted against The Yogurt Exchange on the BOPA issue. Yet, the actual assignment of

error dealing with BOPA does not make a specific argument concerning the denial of plaintiffs' motion for summary judgment against The Yogurt Exchange; so it appears that plaintiffs realize that their settlement with The Yogurt Exchange precludes them from appealing the denial of summary judgment that they sought against The Yogurt Exchange.

{¶ 25} As aforementioned, the individual officers successfully sought summary judgment. According to an affidavit relied upon by the officers, BOPA was initially relevant to the transaction at issue. However, they claimed immunity because they are officers of a corporation and are not "sellers" under BOPA. In the alternative, they claimed that the transactional documents complied with Section 436.1 et seq., Title 16, C.F.R., making the transaction exempt from BOPA.

{¶ 26} Appellants' first assignment of error is divided into three parts, the first of which contends that "[d]efendant officers are not exempt from the requirements of the BOPA by virtue of their status as corporate officers and agents." Appellants note that either a seller or a broker can be held liable under the Act. A "seller" is defined as a person who leases or sells a business opportunity plan. R.C. 1334.01(A). See, also, R.C. 1334.01(E) (defining a "person" as an individual, a corporation, a partnership, or other business entity). A "broker" is defined as a person, other than a seller, who sells or leases, offers for sale or lease, or arranges for the sale or lease of a business opportunity plan for a commission, fee, or anything of value. R.C. 1334.01(C). The individual appellees argue that they are not brokers and that the seller was The Yogurt Exchange, Inc., not them as individuals.

{¶ 27} There seems to be a dearth of Ohio law interpreting whether an officer or agent of a corporation who actively participates in the sale of the franchise would fall under the definition of seller or broker. There are cases in which the facts establish that certain individual defendants who were principals of the corporation were sued under BOPA. However, the specific issue of whether they fit the definition of sellers or brokers was not raised before the ruling courts. See *Peltier v. Spaghetti Tree, Inc.* (1983), 6 Ohio St.3d 194, 6 OBR 249, 451 N.E.2d 1219 (where officers and agents were sued; however, the facts occurred prior to enactment of R.C. Chapter 1334 and the court's discussion of R.C. Chapter 1334 was only to prove that R.C. Chapter 1707 dealing with securities was inapplicable); *State ex rel. Celebrezze v. Roadmasters of Ohio, Inc.* (Mar. 1, 1983), 10th Dist. No. 83CV–01–641, 1983 WL 197506 (where there was no argument made concerning the individual defendants' liability as sellers). See, also, *In re Energy Sys. Equip. Leasing Sec. Litigation* (E.D.N.Y.1986), 642 F.Supp. 718 (noting that the court's research failed to uncover cases interpreting the terms seller or broker and that whether the Ohio statute allows legal and tax

counselor to be held personally liable as seller or broker could be plausibly interpreted either way).

{¶ 28} There is a case where the issue of personal liability was specifically addressed; however, the arguments are distinguishable and the holding appears incorrect. *Dreizler v. Destefano* (July 15, 1987), 1st Dist. No. C–860540, 1987 WL 14159. In that case, the First District upheld a judgment against the president of a corporation under BOPA. However, the defendant-appellant president did himself an injustice by misconstruing the statute, and due to this misconstruction in his assignment of error and text, the appellate court followed suit. Instead of arguing that he merely did not meet the definition of a seller or broker, he argued that he did not meet the definition of a seller, broker, or affiliated person. The court held that the president fit the definition of "an affiliated person." See R.C. 1334.01(F) for the definition of an affiliated person. Note that the court did not find that the president met the definition of a seller or broker.

{¶ 29} In imposing liability under BOPA based upon the affiliated-person language, the misconstruction occurred. Even if the president fit the definition for an affiliated person, neither of the definitions of seller and broker includes an affiliated-person. See R.C. 1334.01(A), (C), and (E). Rather, the affiliated-person language deals with the definition of a business opportunity plan itself, as the goods to be supplied can be supplied by the seller or by an affiliated person. R.C. 1334.01(D)(1). There is no indication that liability can be imposed on the affiliated person. See R.C. 1334.02 (prohibiting a broker or seller from failing to provide a disclosure document); R.C. 1334.03 (entitled "prohibited actions of seller or broker"); R.C. 1334.08(B) and (D) (mentioning remedies against a seller or broker); R.C. 1334.09 (mentioning attorney fees against a seller or broker). Here, appellants (correctly) do not contend that the affiliated-person language works in their favor to impose personal liability on the officers. Rather, as aforementioned, appellants state that the officers are either sellers or brokers.

{¶ 30} Due to the scarcity in case law interpreting Ohio law, we shall review the relevant Uniform Act and the cases interpreting similar laws from other states. Such review establishes that Ohio's BOPA was enacted eight years prior to the Uniform Franchise and Business Opportunities Act, and the Uniform Act differs from Ohio's BOPA. For instance, the Uniform Act precludes "a person" from engaging or failing to engage in certain acts, without limiting it to seller or broker, whereas Ohio's BOPA precludes a "seller or broker" from same. Regardless, the notes and commentary concerning the Uniform Act do not provide guidance on the issue.

{¶ 31} As for the laws of our sister states, a multitude of jurisdictions have franchise and/or business opportunity plan disclosure laws. There is a plethora of case law allowing suits to be filed against officers, directors, or agents of

corporations under these laws. However, the laws are highly distinguishable. For instance, California's law, Section 31302, specifically provides for joint and several liability and defines a seller as every person who directly or indirectly controls the person liable and includes the director of a corporation and even employees who materially aid the violation. Connecticut's law, Section 36b–61, defines a seller as a person who is engaged in the business of selling or offering for sale business opportunities or any agent or representative of such person. Florida's law, Section 559.801, includes anyone with a substantial interest or who effectively controls, as well as individual officers or directors. New Jersey's law, Section 56:10–3, mentions one with a majority interest or effective control and includes individual officers, directors, or others. This is just a sampling of the states. Other states have similar language in their definition sections.

{¶ 32} Ohio's statute, however, merely defines seller as a person who sells or leases. "Person" can include an individual or a corporation. However, this language does not demonstrate an intent to hold officers and directors liable as does the specific language of the other states. The word "individual" is merely a normal definition of person to be used when the seller is a sole proprietorship or other entity wherein the owners do not have a corporate shield. The Ohio statute specifically holds one type of agent liable: a broker. If seller included any individual involved in the sale on behalf of the seller, then this definition and specific imposition of liability would not be necessary. A "broker" is defined as a person, other than a seller, who sells or leases, or offers or arranges for the sale or lease of, a business opportunity plan for a commission, fee, or anything of value. An officer of a corporation is not commonly considered a broker merely because the corporation does not hire a broker and rather has its officers act on its behalf. Besides veil-piercing against shareholders (which plaintiffs do not mention until their third assignment of error dealing with fraud) and personal liability for fraud committed by an individual which is discussed infra, a statute creating a new right of redress must express its intent to hold officers personally liable in the area of regulation. Ohio's BOPA does not express this intent facially, especially when compared to the laws of other states.

{¶ 33} Moreover, in comparing the BOPA with other Ohio laws, the same conclusion arises. For example, the previously mentioned CSPA defines supplier as including other persons engaged in the business of effecting or soliciting consumer transactions in addition to a seller. R.C. 1345.01(C). Furthermore, a statute providing liability in securities transactions specifically states that when a corporation is liable, each director is likewise liable unless he can show certain things. R.C. 1707.41. Hence, the legislature was aware how to show its intent to hold officers liable under the newly created rights or redress. In conclusion, it appears that the officers or directors of a corporation are not included in the

BOPA's definition of a seller or a broker. As such, the trial court properly granted summary judgment to the individual officers on this legal issue.

{¶ 34} The second subpart under this assignment of error alleges that "[d]efendants are not exempt from the requirements of the BOPA by virtue of Ohio Rev.Code Sec. 1334.13(A)." The third subpart contends that the "disclosure document that defendant officers rely upon is facially defective under the BOPA, subjecting defendant officer to liability under Ohio Rev.Code Sec. 1334.09."

{¶ 35} Pursuant to R.C. 1334.13(A), most of the requirements of the BOPA do not apply to any transaction that fully complies with the Federal Trade Commission's trade regulation rule entitled "disclosure requirements and prohibitions concerning franchising and business opportunity ventures," contained in Section 436.1 et seq., Title 16, C.F.R. Appellees submitted the affidavit of their attorney who prepared the franchise agreement and disclosure statement. This affidavit states that because the company planned to operate in multiple states, it exercised its right under R.C. 1334.13 and complied with Section 436.1 et seq., Title 16, C.F.R. Attached was the form disclosure document prepared by this attorney.

{¶ 36} First, plaintiffs contend that they never received a disclosure document. One plaintiff's affidavit claims this nonreceipt; however, prior deposition testimony by this same plaintiff shows otherwise. (Aug. 5, 1994 Depo. 14–15, admitting receipt of a franchise agreement and a disclosure document in the fall of 1988 at the first meeting at Pancallo's house.) Defendant Pancallo's affidavit confirmed that plaintiffs were given the document.

{¶ 37} Plaintiffs state that this does not establish that the document was delivered in a timely manner as required by the rule. Plaintiffs also contend that even if they received the document, the document failed to comply with other aspects of the BOPA or the Federal Trade Commission rule. Plaintiffs set before the trial court various examples of alleged departures from Section 436.1, Title 16, C.F.R. They state that these departures show that the transaction failed to "fully comply" with Section 436.1, Title 16, C.F.R., and, thus, appellees cannot use the exemption contained in R.C. 1334.13(A). Then, they set forth examples of how the document failed to comply with the BOPA, e.g., the lack of notice of the right to cancel within five days. The defendants did not contest that there was a failure to comply with some of the requirements of the BOPA; instead, they relied on the Ohio exemption in R.C. 1334.13(A) due to their claimed compliance with the federal rule.

{¶ 38} Due to our resolution of the first subassignment finding that the officers are not liable under the plain language of BOPA and that summary judgment was properly granted in their favor on this issue, these remaining two subassignments need not be addressed. As aforementioned, the appeal concerns

the court's decisions regarding the officers' liability, and because we found that they are not liable under the language of BOPA, we need not evaluate the documents' compliance with BOPA or the federal trade regulation.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶ 39} Appellants' third assignment of error alleges:

{¶ 40} "The lower court erred in granting summary judgment to defendants Lanasa, Pancallo, Robert Zabel and R. Lee Zabel on the fraud claims of plaintiffs."

{¶ 41} This assignment corresponds to the third count of the complaint, which alleged fraud. This assignment is broken into the following two alternate subparts: (1) "Corporate officers are personally liable for frauds they commit" and (2) "Plaintiffs are able to 'pierce the corporate veil' to hold defendant officers personally liable."

{¶ 42} The tort of fraud or fraudulent inducement has the following elements: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representation; (4) justifiable reliance; and (5) injury proximately caused by the reliance. See, e.g., *Mussivand v. David* (1989), 45 Ohio St.3d 314, 322, 544 N.E.2d 265; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 83, 10 OBR 408, 461 N.E.2d 1273, fn. 4.

{¶ 43} Generally, fraud is not predicated on a representation concerning a future event, as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring. *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 742, 607 N.E.2d 1140. However, a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future. Id. See, also, *Williams v. Edwards* (1998), 129 Ohio App.3d 116, 124, 717 N.E.2d 368; *Tibbs v. Natl. Homes Constr. Corp.* (1977), 52 Ohio App.2d 281, 287, 6 O.O.3d 300, 369 N.E.2d 1218.

{¶ 44} Here, we have allegations such as that defendants promised to supply a multitude of items and services to help plaintiffs, that defendants told plaintiffs that the initial $102,000 loan would be sufficient capital, and that defendants said that plaintiffs would make a profit in the first year and could pay their son $1,000 per month and take salaries and bonuses. In their motions for summary judgment, the defendants' only allegation was that they were immune

due to their status as officers of the corporation and that plaintiffs presented insufficient evidence to pierce the corporate veil. However, it seems that the trial court and the defendants failed to recognize a distinction in the law of agency and corporate law. See *Krieger Ford, Inc. v. Chase Motors, Inc.* (Aug. 3, 1999), Franklin App. No. 98AP–982, at 8, 1999 WL 561693 (holding that personal liability of the president of the corporation does not depend on the same grounds as piercing the corporate veil).

{¶ 45} Successfully piercing the corporate veil places personal liability on individual shareholders for the corporation's liabilities. The corporate form can be disregarded and individual shareholders held liable for corporate wrongdoing when control is so complete that the corporation has no separate will, mind, or existence (the alter-ego doctrine) and the control is exercised to commit fraud or an illegal act that injures the plaintiff. *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 289, 617 N.E.2d 1075. Each case is to be decided sui generis, on its own facts. *Longo Constr., Inc. v. ASAP Tech. Serv., Inc.* (2000), 140 Ohio App.3d 665, 671, 748 N.E.2d 1164.

{¶ 46} The defendants in this case are not only shareholders of a closely held corporation, but they are also officers who allegedly personally engaged in various transgressions. There is a distinctive rule applied to officers or directors that is a general rule of ·agency law. See, e.g., Restatement of the Law 2d, Agency (1958), Sections 343 and 348 (stating that an agent who makes fraudulent representations is liable in tort regardless of whether the corporation is also liable); Morris, Piercing the Corporate Veil in Louisiana (1991), 52 La.L.Rev. 271, 275, fn. 11 (noting the fine distinctions seldom drawn where an officer is also a major shareholder). See, also, *Maple v. Cincinnati Hamilton & Dayton RR. Co.* (1883), 40 Ohio St. 313, 316–318, 1883 WL 98 (noting that there is joint and several liability between the agent and the principal for the agent's fraud).

{¶ 47} "Ohio law provides that a corporate officer can be held personally liable for a tort committed while acting within the scope of his employment." *Atram v. Star Tool & Die Corp.* (1989), 64 Ohio App.3d 388, 393, 581 N.E.2d 1110 (where the Eighth District explains how the general principles of agency law are applicable to corporate officers and agents), citing *Bowes v. Cincinnati Riverfront Coliseum* (1983), 12 Ohio App.3d 12, 18, 12 OBR 97, 465 N.E.2d 904. "Directors and corporate officers generally may be personally liable for fraud even though the corporation may be liable also." *Centennial Ins. Co. of N.Y. v. Vic Tanny Internatl. of Toledo, Inc.* (1975), 46 Ohio App.2d 137, 141, 75 O.O.2d 115, 346 N.E.2d 330. See, also, *Mkparu v. Ohio Heart Care, Inc.* (1999), 138 Ohio App.3d 7, 27, 740 N.E.2d 293; *Heritage Funding & Leasing Co. v. Phee* (1997), 120 Ohio App.3d 422, 698 N.E.2d 67, (where the Tenth District reversed the trial court's decision that it had no personal jurisdiction over defendants

because they are merely agents of the corporate defendant); *Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc.* (1994), 93 Ohio App.3d 397, 403, 638 N.E.2d 1049.

{¶ 48}   In their motions for summary judgment, the defendants in the case before us merely alleged that they were immune as officers or agents of the corporation and contended that there was no evidence presented on veil-piercing. Plaintiffs did not respond to the first two defendants' motion for summary judgment, but they did set forth some evidence supporting a veil-piercing theory in response to the next two defendants' motion, that being an agreement between the defendants on how the individuals would divide any liability imposed on the corporation.   Nevertheless, it does not appear that plaintiffs were proceeding under this theory except in response to the late summary judgment motions.

{¶ 49}   Regardless, as explained supra, plaintiffs need not pierce the corporate veil to hold individuals liable who allegedly personally committed fraud.[1]   Hence, this assignment of error is with merit, and the trial court's decision granting summary judgment to the individual defendants on plaintiffs' fraud claim is reversed and remanded.   In accordance, summary judgment is affirmed on the CSPA count, affirmed on the BOPA count, and reversed and remanded on the fraud count.

{¶ 50}   For the foregoing reasons, the judgment of the trial court is hereby affirmed in part and reversed in part, and this case is remanded for further proceedings according to law and consistent with this court's opinion.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

GENE DONOFRIO and WAITE, JJ., concur.

---

1.   Any other defenses based on factual matters (such as sufficiency of allegations on intent and knowledge of falsity) set forth by the officers on appeal were not raised below.   Further, knowledge of falsity and intent are states of mind that can be inferred and of which a plaintiff is not expected to have concrete proof to avoid summary judgment.