OPINION
{¶ 1} This is an appeal of summary judgment in an employment dispute. Appellant filed a three-part claim in the Jefferson County Court of Common Pleas alleging fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation regarding her hiring and firing. Appellant alleged that Appellee Alabanza Corporation lured her into leaving her home and employment in Pittsburgh for a job that would ultimately last less than four weeks. There is no dispute that Appellant was hired as an at-will employee. Appellant was hired to replace Diane Matous, whose title was corporate technical trainer, because Ms. Matous was planning on leaving the company to go into missionary work. Ms. Matous, though, was unable to embark on the missionary journey, and so did not leave the company. The record does not reveal any material misrepresentation regarding Appellant's employment. All the parties, including Ms. Matous herself, believed that she would be leaving and that Appellant was needed to replace her. Appellant accepted at-will employment under those conditions. Appellant has not provided any evidence to show that Appellee knew that Ms. Matous was going to change her mind about leaving, or that Appellee used this knowledge to mislead Appellant. There is no evidence to support crucial aspects of Appellant's claims, and the trial court was correct in granting summary judgment to Appellee.
 FACTS {¶ 2} In April 2000, Mr. Sam Campoli, of the recruiting firm of Raider-Landree in Pittsburgh, contacted Appellant and offered her a position in Appellee's company in Steubenville. She was told that she would be replacing Diane Matous, Appellee's *Page 2 
corporate technical trainer, and that Appellee was hoping to fill the position before Ms. Matous left. (Isaac Depo., p. 24.) They never discussed how long Appellant would be employed. (Isaac Depo., pp. 21, 34.)
 {¶ 3} Appellant had an initial interview with Carrie Libetti in late July of 2000. (Isaac Depo., pp. 31, 42.) Appellant was told that the job was a full-time position, but the terms were left indefinite. (Isaac Depo., pp. 34, 46.) Appellant believed this meant permanent long-term employment, and she even thought that she could work until retirement, but these were not promises or commitments made by anyone at the company. (Isaac Depo., pp. 34-35.) Appellant also believed that she could only be fired if she did something wrong in her job, but this was never expressed by any representative of the company. (Isaac Depo., p. 35.)
 {¶ 4} On July 25, 2000, Appellant signed an "Application for Employment" which stated that "any employment I might be offered by Alabanza is at-will, of indefinite duration and not a contract, * * * I understand that satisfactory completion of my probationary period will not change my status as an at-will employee." Although there is a reference to "Maryland law" in the application, there is no choice of law provision requiring the application to be interpreted using Maryland law. Appellant stated that she did not read the application carefully, giving it only a "spot read." (Isaac Depo., pp. 42, 44, 46.) She did not remember the part of the application dealing with at-will employment. (Isaac Depo., p. 44.)
 {¶ 5} Two weeks later, Appellant had a second interview in which she gave a training presentation to Diane Matous and to John Sengenberger, who was to be her *Page 3 
manager. (Isaac Depo., pp. 33, 36.) Nothing was said about the length of Appellant's employment. (Isaac Depo., p. 47.) There were no further interviews.
 {¶ 6} Appellant was told a number of times prior to being hired that there was a hiring freeze at the company, but that she could be hired when the freeze was lifted.
 {¶ 7} On or about August 14, 2000, Appellee sent Appellant a letter offering an at-will employment position for corporate technical trainer, commencing on Monday, August 21, 2000. Appellant signed a 2-page employment agreement on August 21, 2000. The agreement specified that Appellant was an at-will employee. The agreement contains a Maryland choice of law covenant.
 {¶ 8} The record indicates that Diane Matous did not leave her position as corporate technical trainer. On September 18, 2000, Appellant received a letter notifying her that her employment was being terminated due to a reduction in force.
 {¶ 9} On September 26, 2003, Appellant filed a complaint in the Jefferson County Court of Common Pleas asserting three tort claims: fraud in the inducement, fraudulent misrepresentation, and negligent misrepresentation. On September 26, 2005, Appellee filed a motion for summary judgment on all claims. Both parties relied on a deposition of Ms. Isaac that had been taken on July 8, 2002 while a previous complaint dealing with the same employment issues was pending, which was later dismissed. This deposition was made a part of the record.
 {¶ 10} The trial court held a hearing on the motion for summary judgment on October 18, 2005. On October 31, 2005, the trial court filed a judgment entry *Page 4 
granting summary judgment to Appellee. Appellant filed this timely appeal on November 21, 2005.
 STANDARD OF REVIEW {¶ 11} An appellate court applies a de novo standard when reviewing a trial court's decision to grant summary judgment, using the same guidelines as the trial court, as set forth in Civ.R. 56(C). Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. When a court considers a motion for summary judgment the facts must be taken in the light most favorable to the non-moving party. Id.
 {¶ 12} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis in original.) Dresher v. Burt (1996),75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, the nonmoving party must produce some evidence *Page 5 
that suggests that a reasonable factfinder could rule in that party's favor. Brewer v. Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378, 386,701 N.E.2d 1023.
 {¶ 13} Appellant presents two assignments of error, which will be treated in reverse order.
 ASSIGNMENT OF ERROR NO. 2 {¶ 14} "THE TRIAL COURT ERRED IN FAILING TO PROPERLY APPLY MARYLAND LAW."
 {¶ 15} Appellant argues on appeal that the trial court should have applied Maryland law to resolve the issues of fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation. Appellant is mistaken. Maryland law might have been a consideration if Appellant had filed a contract claim, but Appellant's complaint contains only tort claims. Fraudulent misrepresentation is a tort claim. Dynes Corp. v.Seikel, Koly Co., Inc., (1994), 100 Ohio App.3d 620, 647-648,654 N.E.2d 991. Fraudulent inducement is a tort claim. Yo-Can, Inc. v. TheYogurt Exchange, Inc., 149 Ohio App.3d 513, 2002-Ohio-5194,778 N.E.2d 80, ¶ 42. Negligent misrepresentation is a tort claim. J.A. Industries,Inc. v. All Am. Plastics, Inc. (1999), 133 Ohio App.3d 76, 83,726 N.E.2d 1066. Appellant did not allege a breach of contract claim in her complaint, and breach of contract was not under review in the trial court proceedings. No breach of contract claim is being asserted on appeal.
 {¶ 16} Tort claims are, with few exceptions, subject to the law of the place where the tort occurred. Sarmiento v. Grange Mut. Cas. Co.,106 Ohio St.3d 403, *Page 6 2005-Ohio-5410, 835 N.E.2d 692, ¶ 8. In a tort case, "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit."Morgan v. Biro Mfg. Co. (1984), 15 Ohio St.3d 339, 342, 474 N.E.2d 286. In this case the alleged torts took place in Ohio, and thus, Ohio law controls even though an underlying contract claim would likely be subject to Maryland law pursuant to the choice of law provision in the contract. There is no choice of law provision in the application for employment that Appellant signed on July 25, 2000. Thus, Maryland law is in no way involved with regard to pre-employment events. Maryland has no relationship to the torts alleged by Appellant, except that it is mentioned in a choice of law provision in the employment contract.
 {¶ 17} Appellant is only appealing the trial court's ruling as it pertains to the allegations in her complaint, which were all tort claims. The October 31, 2005, Judgment Entry does not actually state that the trial court applied Maryland law, although it does cite the Maryland choice of law provision in the contract. If anything, the trial court may have been mistaken by referring at all to Maryland law, but since appellate review of summary judgment is de novo, the correct Ohio law can be applied on appeal. Thus, Appellant's second assignment of error is without merit, and Ohio law must be applied in interpreting the issues on appeal. *Page 7 
 ASSIGNMENT OF ERROR NO. 1 {¶ 18} "THE TRIAL COURT ERRED IN SUSTAINING THE DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 19} Appellant contends that there are material facts in dispute as to all three of her tort claims. Two of the claims are for fraud, and one is for negligence. These will be treated separately.
1. Fraud claims. {¶ 20} Appellant's complaint alleged fraud in the inducement of a contract and fraudulent misrepresentation. A prima facie case for fraudulent inducement must contain the following evidence: (1) a representation material to the transaction; (2) made falsely, with knowledge of its falsity, or with utter disregard and recklessness regarding its truth or falsity; (3) with the intent to mislead another into reliance; (4) justifiable reliance on the representation or concealment; (5) and injury proximately resulting from such reliance.Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69,491 N.E.2d 1101, paragraph two of the syllabus.
 {¶ 21} The elements of a cause of action for fraudulent misrepresentation are: (1) a material false misrepresentation; (2) knowingly made; (3) with intent of misleading another into relying on it; (4) reasonable reliance on the misrepresentation; and (5) injury resulting from the reliance. Gaines v. Preterm-Cleveland, Inc. (1987),33 Ohio St.3d 54, 55, 514 N.E.2d 709.
 {¶ 22} It has been said that the elements of fraudulent inducement are essentially the same as those for fraudulent misrepresentation, fraudulent *Page 8 
concealment, and fraudulent nondisclosure. Information Leasing Corp. v.Chambers, 152 Ohio App.3d 715, 2003-Ohio-2670, 789 N.E.2d 1155, at ¶ 84.
 {¶ 23} In Ohio, unlike in some other states, an at-will employee may assert a cause of action for fraud in the inducement, despite the fact that an at-will employee may be terminated at any time with or without a showing of good cause. "Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook." (Emphasis added.) Wing v. Anchor Media, Ltd. ofTexas (1991), 59 Ohio St.3d 108, 110, 570 N.E.2d 1095. Cf.,Dewachter v. Scott (Fl.App., 1995), 657 So. 2d 962 (a fraudulent inducement claim is inconsistent with at-will employment).
 {¶ 24} There are two alleged fraudulent misrepresentations that Appellant is relying on in this case. The first alleged misrepresentation is that the job was portrayed as permanent when it was not. Appellant's brief is completely in error when it states that someone from Appellee's company promised or even mentioned long-term or permanent employment. Appellant herself was forced to admit that Appellee never mentioned permanent employment during or after the hiring process:
 {¶ 25} "Q. [by Appellee's counsel] I just want to basically focus on what was said. Why don't you go ahead and tell me what was discussed.
 {¶ 26} "A. [by Ms. Isaac] Benefits were discussed.
 {¶ 27} "Q. Okay.
 {¶ 28} "A. Salary was discussed. *Page 9 
 {¶ 29} "Q. Okay.
 {¶ 30} "* * *
 {¶ 31} "Q. Okay.
 {¶ 32} "Back up a second to the first initial interview. Did she [Carrie Libetti] mention anything regarding length of employment?
 {¶ 33} "A. No, I don't believe so.
 {¶ 34} "Q. Okay.
 {¶ 35} "What else was said?
 {¶ 36} "A. It was a permanent position. That would be the only thing, permanent full time." (Isaac Depo., pp. 33-34.)
 {¶ 37} Shortly after these comments, Appellant retracted her statement that Appellee represented the job as permanent:
 {¶ 38} "Q. Let me ask something: Whose words are those, permanent employment?
 {¶ 39} "A. That would be mine." (Isaac Depo., p. 35.)
 {¶ 40} Appellant also admitted that she never thoroughly read the pre-employment agreement or the employment contract, particularly the parts describing at-will employment. (Isaac Depo., pp. 46, 66-67.) The Ohio Supreme Court has stated that the failure to read the terms of a contract "drives a stake into the heart" of a fraud claim: "`A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.'" ABM Farms, Inc.v. *Page 10 Woods (1998), 81 Ohio St.3d 498, 503, 692 N.E.2d 574, quotingMcAdams v. McAdams (1909), 80 Ohio St. 232, 240-241, 88 N.E. 542.
 {¶ 41} Although Appellant cites on appeal certain portions of her deposition giving the impression that Appellee represented the job as long-term, the deposition contradicts itself numerous times on this point. Self-contradictory statements by the plaintiff cannot generally be used to overcome a motion for summary judgment in favor of the defense. Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455,850 N.E.2d 47, ¶ 28-29.
 {¶ 42} The only specific evidence that Appellant attempted to rely on to show that Appellee made a promise as to the length of employment was a letter dated August 14, 2000. This letter is one-page long, and on examination, neither says nor implies anything about the length of employment. It offers Appellant the job of corporate technical trainer, to start on August 21, 2000. It discusses salary, payroll periods, stock option plans, health insurance, dental insurance, vacation, and other benefits. It also states that Appellant was required to sign the employment agreement and return it to the company along with some tax forms. Appellant apparently believes that she was being promised long-term employment simply because the letter discussed aspects of employment that involved future events and planning, such as stock options, health insurance, and vacation time. There is nothing contradictory in an at-will employee being offered health care, vacation time, retirement benefits, or any other type of benefit, without these things changing the nature of the at-will employment relationship. See, e.g., Sexton v. Oak Ridge *Page 11 Treatment Ctr. Acquisition Corp., 4th Dist. No. 05CA34, 2006-Ohio-3852, at ¶ 13. An at-will employee is not necessarily a short-term employee. An employer's attempt to provide for the possibility of long-term employment is not the same as guaranteeing long-term employment. Even giving Appellant every reasonable benefit of the doubt in interpreting the letter from August 14, 2000, it cannot be read as a promise of permanent or long-term employment.
 {¶ 43} The second alleged misrepresentation is that Appellee portrayed its future prospects as a company very glowingly when in fact it was in financial trouble. Appellant also tries to twist this allegation into a failure to disclose the true financial outlook of the company. Appellant states that she relied on the encouraging future prospects of the company in making her decision to take the position.
 {¶ 44} This Court has held that: "Generally, fraud is not predicated on a representation concerning a future event, as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring." Yo-Can, Inc.v. The Yogurt Exchange, Inc., 149 Ohio App.3d 513, 2002-Ohio-5194,778 N.E.2d 80, ¶ 43. Thus, Appellee's positive and glowing presentation of the future prospects of the company is not actionable.
 {¶ 45} The Yo-Can, Inc. opinion, however, did conclude that, "a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future." Id. The record does not indicate any connection between Appellee's alleged misrepresentation of the future prospects of the company with any promise made by Appellee that was done with a *Page 12 
present intention not to perform the promise. The record does not indicate any promise made by Appellee other than the promise that Appellant would be employed as an at-will employee to fill the position that Diane Matous intended to vacate. This is the promise that Appellant needed to show the company never intended to fulfill. The record indicates that all parties expected Diane Matous to leave, prepared for her to leave, and hired and trained Appellant as if Diane Matous was leaving. There is no evidence to support an inference that Appellee knew that Diane Matous would not leave on her foreign mission assignment. Such evidence was necessary to support Appellant's fraud claim.
 {¶ 46} Appellant testified that Appellee was desperate to fill the position held by Diane Matous. (Isaac Depo., p. 88.) Appellant knew that she was only being hired to replace Diane Matous. (Isaac Depo., p. 63.) Appellant conceded that, prior to the time she was actually hired, Diane Matous truthfully and sincerely intended to leave the company:
 {¶ 47} "Q. That wasn't a false statement by Alabanza, because she [Diane Matous] was intending to leave, correct?
 {¶ 48} "A. She was intending, but I think that changed. After I got there, it changed.
 {¶ 49} "Q. Did she tell you she was leaving when you were interviewing and stuff?
 {¶ 50} "A. Yeah, she was going to go into missionary work. *Page 13 
 {¶ 51} "Q. So is that — the purpose why you were hiring, [sic] that being Diane Matous leaving, you would agree that's a true statement?
 {¶ 52} "A. At the very moment that I was hired, yes, Diane Matous was planning to leave, yes. And the purpose that they hired me was to fill her shoes as corporate technical trainer." (Isaac Depo., p. 96.)
 {¶ 53} The fraudulent inducement claim alleges that fraud occurred before Appellant was hired, i.e., that some fraudulent act caused Appellant to accept the job offer. Yet, Appellant's own testimony indicates that there was no fraudulent conduct that led Appellant to accept the job. Appellant admitted that, up to the point she was hired, Diane Matous planned to leave the company. The fact that Diane Matous did not leave, in and of itself, creates no inference that she was not planning on leaving. At any rate, Appellant was clear about the fact that Diane Matous did intend to leave. Appellant's own deposition testimony completely contradicts any theory that Appellee misled her about Diane Matous' intent to leave the company.
 {¶ 54} Appellee never discussed with Appellant what would happen if Diane Matous failed to leave as planned. All the parties simply assumed that it would happen. Although Appellant seems to believe that she should have been offered alternative employment, this was not discussed prior to her hiring, and the record does not support any other promise of employment. Therefore, the record contains no evidence to support any fraud in the events leading up to Appellant's employment in the company. *Page 14 
2. Negligence claim. {¶ 55} The elements of negligent misrepresentation are as follows: "`One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" Delman v. Cleveland Heights (1989), 41 Ohio St.3d 1, 4,534 N.E.2d 835, citing 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1). A claim for negligent misrepresentation cannot be based on omissions or on a failure to do something, but rather, must be based on affirmative statements or acts. Textron Fin. Corp. v.Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, 149,684 N.E.2d 1261. Furthermore, a claim for negligent misrepresentation cannot be based on representations of future action or conduct unless it can be established that, at the time the representation was made, the party had no intention of carrying it out. Phillips v. State Farm Fire CasualtyCo. (Sept. 27, 1993), 12th Dist. No. CA92-11-215, p. *3; see alsoYo-Can, Inc., supra, 149 Ohio App.3d 513, 2002-Ohio-5194, 778 N.E.2d 80.
 {¶ 56} It is not at all clear that Appellant is permitted to assert a negligence claim to recover damages based on the termination of an at-will employment contract. As stated in Wing v. Anchor Media, Ltd. ofTexas, cited earlier, an at-will employment relationship will be upheld unless there was fraud in the inducement of *Page 15 
the employment contract. Wing, supra, 59 Ohio St.3d at 110,570 N.E.2d 1095. Wing did not say negligence in the inducement, but rather, fraud in the inducement. There is caselaw to support that Ohio does not recognize the tort of negligent misrepresentation in the at-will employment context. Vickers v. Wren Industries, Inc., 2nd Dist. No. 20914, 2005-Ohio-3656 ¶ 48.
 {¶ 57} Furthermore, the facts of this case reflect that Appellee never promised or even mentioned continued or long-term employment, and never indicated that the job would ever be anything more than an at-will relationship. As such, Appellant could not have justifiably relied on any representation or misrepresentation about the economic health of the company as an indicator of long-term employment when she was never promised long-term employment.
 {¶ 58} It is not even clear that Appellant has sufficiently described a misrepresentation, negligent or otherwise. Appellant alleges that Carrie Libetti, an employee of Alabanza who interviewed her, misrepresented the reasons for a hiring freeze and audit that Appellant assumes led to the termination of her job. As was explained above, though, the reason Appellant was not kept as an employee was that Diane Matous changed her mind about leaving, and thus, there was no position for Appellant to fill. Appellant's argument is based on some implied presumption that she would be given alternative employment if the corporate trainer job did not work out as planned. This presumption has no basis in the record. Be that as it may, Appellant acknowledges that she was aware of the hiring freeze and audit at the early stages of the hiring process. She contends, though, that Carrie Libetti *Page 16 
explained the hiring freeze as part of the audit, and described the audit as a routine business audit to make sure the company was headed in the right direction. (Isaac Depo., pp. 26-27.) Appellant then refers to the termination letter dated September 18, 2000, which states:
 {¶ 59} "I am sure the news of your being personally effected [sic] of by the reduction in force is unsettling. This is one of the most difficult decisions Alabanza has ever had to make. The decision was made after several months of study and considerable deliberation."
 {¶ 60} Appellant interprets this letter to mean that Appellee knew that it was going to be eliminating jobs even as it was interviewing her to replace the corporate technical trainer. Appellant considers this to be a material misrepresentation of the growth of the company and of the length of her employment. This is not a reasonable or even a possible inference arising from the facts to which Appellant has referred in the record. Appellant was fully aware that there was an audit and hiring freeze in process when she was being considered for the job. There is nothing in the record that indicates Alabanza had concluded its audit or its study of the economic health of the company prior to Appellant's hiring. An audit or a study implies some type of evaluation that will eventually lead to a conclusion. The fact that the conclusion is different than what one may have been expecting cannot be construed as a misrepresentation. There is nothing in the record showing that Appellee had advance knowledge of the outcome of its economic study. Appellant is relying on impermissible inferences rather than on specific evidence of misrepresentation. *Page 17 
 {¶ 61} For all the aforementioned reasons, Appellant's first assignment of error is overruled.
 {¶ 62} In conclusion, the record indicates that Appellant made numerous assumptions about the length and prospects of her employment that are simply not warranted by any statements or representations made my Appellee. Appellant's claims of fraud and negligence are based on what she hoped for, what she believed Appellee said, rather than on actual assertions or promises. Appellant has failed to provide critical pieces of evidence that would support the fraud and negligence claims, and thus, the trial court was correct in granting summary judgment to Appellee. The judgment of the Jefferson County Court of Common Pleas is affirmed.
 Donofrio, J. and DeGenaro, P.J., concurs. *Page 1